Staples, J.
delivered the opinion of the court.
The court is of opinion, that the declaration and claim of “homestead” made by Beverley Randolph on the 17th of March 1871, is void as against the .judgment recovered by Duval, Keigler & Co. at the July term of the County court of Clarke, 1868. That such declaration and claim are invalid as to anteeecedent debts is fully established by the decisions of this court, and of the Supreme Court of the United States. Homestead Cases, 22 Gratt. 266.
The deed of trust executed by Beverly Randolph on the 10th of August 1871, for the benefit of his wife and children, and embracing a part of the property claimed as a homestead, is also void as against said judgment. That deed not being upon consideration deemed valuable in law, must be regarded as merely voluntary, and therefore invalid as against the claims of creditors whose debts were contracted prior to its execution.
Under the provisions of the second section, chapter 179, Code of 1860, it was competent for Duval, Keigler & Co., without having sued out an execution at law, to impeach by bill in equity, the deed of homestead •and deed of trust upon the ground of fraud, actual or constructive. The appellant Russell being the bona fide assignee of said judgment recovered by Duval, *714 Eeigler & Co., stands in their shoes; is substituted to-all their rights and remedies, and entitled to enforce-an ysecurity they may justly claim.
The court is further of opinion that although the-tract of land conveyed by Randolph to Cobb was ordered to be sold under a decree of the Circuit court of the United States, rendered on the 15th of October-1878, to satisfy the judgment aforesaid, as well as the claims of Cobb’s creditors, it was nevertheless provided in that decree, that Duval, Eeigler & Co. should not be entitled to recover any of the proceeds of sale until they shall have exhausted the lands of Beverly Randolph, decreed also to be sold; and should by further proof show to the court that said land has proved insufficient to pay the. claim, and the amount of said-deficiency.”
There is no pretence for saying that this decree operated as a satisfaction of the judgment; for although its priority was recognized, yet the United" States court was clearly of opinion, and very properly so, that Randolph’s estate ought first to be applied to the judgment before any part of the land purchased by Cobb from-Randolph was subjected: And this upon the obvious ground that the judgment was a debt of Randolph for which neither Cobb nor his estate was justly liable.
The same rule was adopted by the United States-court in its decree of the 12th September 1874. By that decree the court refuses to order any distribution of' the fund whatever, until it could be definitely ascertained what was the exact amount to which Duval, Keigler & Co. would be entitled from the lands of' Randolph directed to be sold under previous decrees-of the court. And none can fail to believe that if the-attention of the United States court had then been called to the fact that Randolph was the owner of other- *715 property justly liable to tbe judgment, that court would have required the holders of that judgment to proceed against that property before subjecting the tract sold and conveyed by Randolph to Cobb. If the United States court was of opinion that a part of Randolph’s estate should be applied to the payment of his individual liabilities, it would as a necessary consequence, have held that the whole, if needed, should be so applied.
The correctness of this view is conclusively shown by the decree of the same court rendered on the 2d of April 1874. That decree recites, “that it now appearing to the court that in addition to the land of Beverly Randolph referred to in former decrees in this cause, there is personal property of the said Beverly Randolph which may be subjected to the payment of the judgment, and said judgment being a debt of Beverly Randolph, and only binding upon the land of J. N. Cobb in case -it cannot be made out of the personalty of Beverly Randolph, or of land sold by him since the sale to J. 2ÑT. Cobb; it was therefore directed that no part of the fund from the sale of the Cobb land should be applied to the satisfaction of the judgment in favor of Duval, Keigler & Co., or their assignee.
This was a final decree. It disposes of the whole matter in controversy. It deprives Duval, Keigler & Co., or their assignee, of the benefit of the judgment lien upon the Cobb land; it excludes them unconditionally from any participation in that fund, and requires them to resort to such estate as Randolph was entitled to for the satisfaction of the judgment.
It has been suggested, that this decree was obtained by the contrivance of Russell himself, who had then become the assignee of the debt. There is nothing in the record to show at whose instance it was rendered- *716 It is the decree of a court having jurisdiction of the parties and the subject matter. It must be held as absolutely conclusive in every other court, unless it is impeached for fraud; of which there is no pretence in this case. If in fact it was entered at the instance of Russell, the matter was easy to be proved by a discovery, or by extrinsic evidence. The record of the decree was filed as an exhibit in this case, and was read without objection in the court below. This court cannot disregard it upon any mere suspicion, or even a suggestion, that the United States court, in rendering this decree, was imposed upon by one of the parties.
But the court is further of opinion, that if the decree is attributable to the action of the appellant Russell, it was nevertheless a just and proper decree under all the circumstances, such as the appellant might well ask and the appellee cannot justly complain of.
As already stated, the judgment recovered by Du-val, Keigler & Co. was against Randolph only; Cobb was in no way bound for that debt. The lien of the judgment upon the land of Cobb, purchased from Randolph, was owing to Cobb’s failure to record his deed in due time. If the deed had been properly recorded, this controversy would never have arisen, •and there would have been no pretence for charging the judgment upon the land purchased by Cobb. But notwithstanding Cobb’s neglect in this particular, it was competent for him to insist that Randolph’s creditors should exhaust all his real and personal estate before subjecting his (Cobb’s) land. And if Cobb had •satisfied the judgment, or it had been paid out of the proceeds of his land, he would have been substituted to all the rights and remedies of Duval, Keigler & *717 Co. against Randolph. Besides this right of substitution, Cobb had his remedy upon the warranty contained in Randolph’s deed to him of the 18th April 1868—a contract entered into long anterior to the claim of homestead and the deed of trust.
Row it must be borne in mind that the appellant, Russell, is the holder of one of the bonds executed by Cobb to Randolph for the purchase money of the land. He is therefore assignee of Randolph, and a creditor of Cobb, having also a vendor’s lien upon the land for unpaid purchase money. The appellant has therefore all the equities of Cobb, and a strong equity against Randolph, growing out of the assignment.
As the holder of the bond, he has, however, but one fund upon which he can rely for payment, and that is the land. On the other hand, Duval, Keigler & Co. have two funds for the satisfaction of their judgment, the land and the property embraced in the deed of homestead and the deed of trust.
A court of equity will so marshal these securities as to compel Duval, Keigler & Co. to exhaust that fund upon which the appellant has no claim, in order that the latter may appropriate the only fund within his reach.
This is a familiar doctrine of the equity courts: the rule being that if one party has a lien or interest in two funds for his debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties: provided always this course does not trench upon the rights or operate to the prejudice of the creditor entitled to the double fund. In such cases, the equity of the creditor having *718 but one fund, is not against the double creditor, but only against tbe common debtor; that the accidental resort of the paramount creditor to the double fund shall not enable the debtor to get back the second fund discharged of both debts. When, therefore, the paramount creditor is satisfied out of the doubly charged fund, the other creditor has a right of substitution to all his rights against the remaining fund. 1 Story’s Eq. Jur., § 638; Adams’ Eq., mar. 272; Vance v. Monroe, 4 Gratt. 93; Jones et als. v. Phelan Collander, 20 Gratt. 229.
According to these authorities, Duval, Keigler & Co. are the only persons who can complain of being required to resort to Randolph’s personal estate to the relief of the land fund; and they can only object upon showing that such a course would operate to their prejudice. If they made that appear, the appellant would still have the right to satisfy their judgment, aud to stand in their place. He has done what is better, he has taken an assignment of the judgment. Clothed with all their rights and remedies, he may very properly proceed against the property of Randolph to satisfy his debt, and against the land of Cobb to satisfy the debt chargeable upon that land. This satisfies all the equities, and attains substantial justice.
The court is therefore of opinion, that if the United •States court had rendered no such decree as the one now under consideration, a court of equity having all the parties before it, and with a view to the adjustment •of their rights, would now adjudicate these questions precisely as that court has done. The appellee Randolph, and those claiming under him, cannot justly ■complain that his property is applied to the payment of debts contracted by him long before his right to a •homestead accrued, and -that his bona fide assignee is *719 thus permitted to collect his debt out of property liable for its payment.
Dor these reasons, the court is of opinion, that the decree of the Circuit court must be reversed, and the cause remanded for further proceedings in conformity with the views herein expressed.
The decree was as follows:
This day came again the parties by counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that the Circuit court erred in dissolving the injunction and in dismissing the bill of the appellant, James B. Russell: wherefore, for the error aforesaid, it is ordered and decreed that the said decree of the Circuit court be reversed and annulled, and that the appellee, Beverly Randolph, pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And this court proceeding to render such decree as the said Circuit court ought to have rendered, it is adjudged, ordered and decreed, that the homestead of the defendant, Beverly Randolph, and the deed of trust executed by him on the 10th day of August 1871 be vacated and annulled, so far as they are in conflict with the debt due to the said James B. Russell, as assignee of the judgment in favor of Duval, Keigler & Co.; that it be referred to one of the commissioners of said court to ascertain and report the exact amount due said Russell as assignee as aforesaid, if the same cannot be agreed by the parties, and a decree to be rendered for the sale of so much of the property embraced in the deed of homestead and deed aforesaid as may be necessary to *720 satisfy the balance due the complainant; and in the meantime said Circuit court, or the judge thereof in vacation, may make such order touching the custody and disposition of the property aforesaid as may seem just and proper; which is ordered to be certified to the said Circuit court of Clarke county.
Decree reversed.