# CHARLESTON.

COMMONWEALTH TRUST COMPANY OF PITTSBURGH, *Trustee,*
*v.* CITIZENS NATIONAL BANK OF CONNELLSVILLE *et al.*

(No. 5091).

Submitted May 5, 1925.    Decided May 12, 1925.

1. MARSHALING ASSETS AND SECURITIES—*Injunction Will Not Lie to Prevent Creditor from Asserting Lien Against Property on Which Another Has Lien, Except on Showing That Securities or Property Proceeded Against Will Not Satisfy Claims of Both.*

   Where a creditor has a lien upon two securities or properties for the payment of his debt, and another creditor of the same debtor subsequently obtains an equitable lien or claim on one of the securities or properties with notice of the prior lien; and the first creditor proceeds to assert his lien upon the securities or property on which the later creditor has an equitable lien or claim, injunction will not lie in favor of the later creditor to prevent the first creditor from so asserting his lien debt unless it appears that the securities or property proceeded against will not satisfy the claims of both.    (p. 170).

   (Marshaling Assets, 26 Cyc. p. 930).

2. SAME—*Doctrine of Marshaling Assets to Protect Subsequent Creditor Cannot be Invoked, if Double Fund Against Which Paramount Lienor Proceeds is Sufficent to Satisfy Claims of Both.*

   The equitable doctrine of marshaling assets for the protection of a subsequent creditor having a lien on a single fund or source of payment in order to protect that fund from

sale by a paramount lienor who also has another fund of the same debtor against which he can proceed, cannot be invoked if the double fund against which the paramount lienor is proceeding is sufficient to satisfy the claims of both creditors. (p. 173).

(Marshaling Assets, 26 Cyc. p. 930).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Harrison County.

Suit by the Commonwealth Trust Company of Pittsburgh, Trustee, against the Citizens' National Bank of Connellsville and others. From an order refusing to dissolve an injunction, the named defendant appeals.

*Decree reversed; injunction dissolved; remanded.*

*P. J. Crogan, Higbee & Matthews,* for appellant.

*H. F. Stambaugh, Watson & Freeman,* and *Hoffheimer & Templeton,* for appellee.

LIVELY, PRESIDENT:

The purpose of the bill is to require defendant Citizens National Bank of Connellsville, Pennsylvania (hereinafter called ''the Bank'') to account for certain securities pledged to it as collateral by J. V. Thompson to secure the payment to it of a debt of $50,000.00 represented by three notes executed by him and others to it, and to require it to credit on said debt of $50,000.00 the value or proceeds of such collateral; and pending the accounting, to restrain the Bank from executing a decree of sale in its favor against coal interests now owned by the Harrison-Doddridge Coal & Coke Company (hereinafter called the ''Coal Company'') rendered by the Circuit Court of Harrison County, upon liens thereon also pledged to the Bank by Jasper Augustine as collateral security for payment of the same debt of $50,000.00; the plaintiff, Commonwealth Trust Company of Pittsburgh, Trustee, (hereinafter called the ''Trust Co.'') also having a trust deed or mortgage lien upon said coal interests secondary in dignity to the Bank's lien. The Bank has a debt of $50,000.00, with interest, against J. V. Thompson and others for the payment of which it is alleged it has two different classes of collateral securities, one class being certain corporate stocks or bonds pledged to it by J. V. Thompson, amounting to $90,000.00 (face value), and a deed of trust on coal lands in Green

County, Pa., of the value of about $129,000.00; and the other class being liens upon the coal interests of the Coal Company pledged to it by Augustine, now reduced to decretal judgment, on which lands of the Coal Company the plaintiff Trust Company also has a mortgage or deed of trust lien second in dignity and priority to the Bank's lien. The Trust Company by this bill seeks to enjoin the sale under the decree, of the Coal Company's Pittsburgh Coal on which it has its mortgage, until the Bank accounts for and credits on the $50,000.00 J. V. Thompson debt the value of the collateral pledged by him to secure payment of that debt. The Bank demurred to the bill, which demurrer was overruled, and then moved the dissolution of the injunction which had been awarded. The court refused to dissolve the injunction, and from that order refusing to dissolve, the Bank appealed. The question presented is whether the bill states a case warranting suspension of the decree of sale pending the assertion of the equities set up in the bill.

The facts alleged:

About the year 1907 Joseph E. Barnes owned a one-sixth interest in about 30,000 acres of Pittsburg Coal in Harrison and Doddridge Counties, in West Virginia; and a J. C. Cochran owned a one-half undivided interest in the same coal. Barnes mortgaged his interest to Jasper Augustine, a citizen and resident of Pennsylvania, to secure payment to him of $150,000.00; and Cochran executed a deed of trust on his one-half undivided interest to John Bassel, trustee, to secure payment of $200,000.00 to Jasper Augustine, represented by twenty notes for $10,000.00 each. At that time the Bank made the loan of the $50,000.00 (which is the primary cause of this litigation) represented by four $12,500.00 notes on which Augustine was endorser or in some way obligated. To secure payment of the $50,000.00 he assigned in writing to F. E. Markell four-fifteenths (or $40,000.00) of the Barnes mortgage, which writing was duly recorded in Harrison and Doddridge Counties; and he also pledged four of the Cochran notes secured by trust deed on the coal as above set out. Markell was the president of the Bank and was acting for it. Afterwards in 1909 J. V. Thompson acquired all of the interests in the coal including the undivided

interests of Barnes and Cochran, subject, of course, to the mortgage and trust to Augustine. In 1910 Thompson procured from Augustine releases of the mortgage and trust deed held by him on the coal, and the releases were duly recorded in the two counties. In 1912 Thompson and wife conveyed the coal to the Harrison-Doddridge Coal and Coke Company (the "Coal Company") in fee with covenants of general warranty and free from incumbrances; and a few days afterwards, on July 1st of that year the Coal Company by mortgage or deed of trust conveyed the coal, with like warranty and free from encumbrances, to the Trust Co. (plaintiff) to secure payment of bonds issued by the Coal Company aggregating the principal sum of $4,000,000.00, and it appears that $3,000,000.00 of the bonds so secured were actually issued and ultimately went into the hands of various purchasers. It does not appear by whom they are now held. The loan of $50,000.00 to the Bank was renewed from time to time, and in February, 1909, was again renewed by the execution of three notes, two for $16,000.00 each and one for $18,000.00 on which Thompson, Barnes and Cochran were either makers or endorsers. These notes were renewed, the interest, and "bonuses" in the amount of $2,000.00 being paid by Thompson until 1917. About that time or soon thereafter Thompson's financial affairs became involved, and the notes not being paid, were duly protested. In December, 1915, the Bank resorted to its collateral pledged by Augustine when the loan was originally made, and instituted its suit in Harrison County to assert its assignment of four-fifteenths of the Barnes' mortgage on the coal and its notes aggregating $40,000.00 executed by Cochran and secured by deed of trust, charging that the releases executed by Augustine were fraudulent, and that the liens on the coal so assigned to it were superior to the deed of trust of the Trust Company. The Trust Company answered and the parties went to proof. The parties defendant in that litigation were the Coal Company, Augustine, Thompson, Barnes, Cochran, the Trust Company and the executrix of the will of John Bassel (the trustee in the Cochran deed of trust). The circuit court upheld the contention of the Bank in that suit, and on appeal to this court was affirmed.

*Citizens National Bank* v. *Harrison-Doddridge Coal & Coke Co. et al.*, 89 W. Va. 659. The amount of the Bank's debt (the original loan of $50,000.00), to secure which the liens on the coal were pledged by Augustine was ascertained to be $66,400.00 and the decree directed commissioners to sell the undivided interest in the coal covered by the liens to pay the sum decreed. The enforcement of this decree of sale is now enjoined, and it is the order refusing to dissolve this injunction to which this appeal was granted. Before the mandate of this court in the former suit affirming the circuit court's decree was received by that court the commissioner appointed to sell had advertised the coal for sale. This suit was promptly instituted and the temporary injunction restraining sale was issued. As before stated, the purpose of the bill is to prevent that sale, pending the ascertainment of the value of certain other collateral securities pledged by Thompson to the Bank for the payment of the original loan by it of the $50,000.00 now decreed to be $66,400.00, and which collateral plaintiff claims is for its benefit and which should be credited on that original loan, and which it claims would practically extinguish it, leaving the Trust Company's lien upon the coal undisturbed and as a first lien. What are these collateral securities pledged by Thompson to the Bank, and why were they not set up in the former suit in which all of the parties in interest were before the court? The bill charges that their existence was unknown to plaintiff, the Trust Company, and could not by reasonable diligence have been discovered by it until after November 29, 1921, the date when the decision of this court was handed down affirming the decree. The bill avers that it was the duty of the Bank to disclose in the former suit that it held these Thompson collateral securities. It is averred that the Bank obtained these securities in the following way, and to support that allegation the affidavit of Thompson is filed, which is practically the substance of the bill in that respect. In January, 1913, Thompson borrowed from Markell $50,000.00 and again in September of that year the further sum of $30,000.00, executing his two notes therefor on which judgments were obtained by Markell in December, 1915, in the sums of $52,683.33 and $30,320.00. To secure payment

of the $50,000.00 to Markell, Thompson pledged bonds belonging to him for the principal sum of $50,000.00 with power of sale and purchase by the holder. To secure payment of the $30,000.00 note Thompson pledged $40,000.00 face value of bonds, his property, as collateral with power to sell said bonds in case of default. Again in 1914, Thompson executed as further security on these two notes aggregating $80,000.00 a mortgage on undivided interests owned by him in coal in Greene County, Pennsylvania, lands; and it is averred that in February, 1915, Thompson, Markell, the Bank, and Receivers who had then been appointed of Thompson's estate, agreed that the bonds pledged as collateral to Markell and the Greene County mortgage should also be held by Markell as collateral security for the $50,000.00 in notes held by the Bank; and later in that year the same persons agreed that Markell should sell, purchase and hold the pledged bonds as security for the Bank's debt of $50,000.00 against Thompson and that the interest accruing on the bonds so sold and purchased should be applied on the Bank's said debt, which agreement was carried out, the bonds being purchased by Markell at private sale for the nominal sum of $5,000.00, and Markell agreed with Thompson that after his and the Bank's debt were paid out of the Greene County mortgage and the bonds, he would account to Thompson or the Receivers for any balance left. In 1917 and pending the suit in Harrison County to assert the Barnes and Cochran collateral, Thompson was adjudged a bankrupt and later in 1919 and 1920 the coal covered by the Greene County mortgage was sold in the bankruptcy proceedings for $129,271.25, out of which sale Markell was paid $81,188.25 on his $80,000.00 debt secured by that mortgage. What became of the remainder of the sale of the Greene County Coal about $48,083.00, is not alleged; but it is alleged that the Bank filed its proven claim against Thompson in the bankruptcy proceedings, in which it made no claim to the security of the mortgage or bonds, and in 1920, after the circuit court had pronounced its decree giving it priority of its Barnes and Cochran security against the coal in Harrison and Doddridge Counties, it withdrew its claim from the bankrupt court, thereby losing its share of the Greene County mortgage to

the detriment of plaintiff's rights as second lienor. The bill asserts that the Bank should be made to account to plaintiff for the loss of this collateral security in the Greene County coal, and that it should be compelled to account for the bonds now held by it in the hands of Markell which bonds it avers are worth in cash $61,000.00; and these sums when ascertained should first be taken to discharge the decretal judgment of $66,400.00, and that the sale should be enjoined pending the ascertainment of these sums and application thereof in discharge of the Bank's debt. Tersely stated, the Trust Company says to the Bank, you have a $50,000.00 debt against Thompson to pay which he has pledged to you securities which you now hold or should hold; and you have also a security for the same debt pledged to you by Augustine and which is a first lien on property of the Coal Company on which I have a second lien; and you should first exhaust your remedy against the Thompson collateral before proceeding against the Augustine collateral.

The proposition is that Thompson is the common debtor of both the Bank and the Trust Company; that when Thompson deeded the coal to the Coal Company with general warranty and free from encumbrances, he became the principal for the payment in full of the Barnes mortgage and the Cochran deed of trust and the Coal Company and the coal itself became his surety for that purpose; and when the Coal Company mortgaged the coal or executed the trust deed to the Trust Company to secure its bond issue of $4,000,000.00 Thompson also stood in the relation of principal to the Trust Company for payment of the Barnes and Cochran liens and it, the Coal Company and the coal subject to these liens became security to him as principal. Therefore Thompson being the principal debtor, the surety is entitled to the benefit of all collateral pledged by him for the payment of a debt to the creditor. Colebrooke on Collateral Securities 2nd Ed. Sec. 239; *Humphreys* v. *Hitt,* 6 Gratt. 509; *Coffman* v. *Moore,* 29 Gratt. 244; *Klapworth* v. *Dressler,* 13 N. J. Eq. 62, and numerous other cases are cited to maintain that proposition. The doctrine is also invoked that a surety may without making payment proceed against the prin-

cipal and creditor in equity to compel the principal to pay the debt in exoneration of the surety, on the principle of quia timet, citing *Neal* v. *Buffington,* 42 W. Va. 327; *Carr* v. *Davis,* 64 W. Va. 522; *Dobie* v. *Fidelity & Casualty Co.,* 95 Wis. 540 and similar cases; also Story Eq. Jur. Sec. 451. These principles may be sound and may be invoked where they apply, but they are not controlling on the facts here detailed, to the extent of warranting an injunction against the decree of sale. The Bank by its decree is asserting its lien upon coal interests which belong to the Coal Company and on which plaintiff, the Trust Company, also has a lien. It may be that if the 30,000 acres of coal be not sufficient to discharge both of these liens, the Trust Company could recoup its losses by recourse upon the Coal Company and Thompson and the securities which he has pledged to the Bank and which could not be held by it if and when the debt is paid for which it was pledged. That contingency is not now before us. It has not arisen, nor is it charged that it will arise. We cannot assume that both plaintiff Trust Company and the Bank do not have ample property subject to their liens out of which they both may be paid. There is no allegation in the bill that plaintiff will lose any portion of its debt after the prior lien of the bank on the undivided interests of Cochran and Barnes have been discharged by a sale of those interests. When plaintiff's mortgage is paid off and discharged it would have no right to proceed against Thompson's property. Its primary security is the coal. It must first look to that coal. It has no express lien on any other property. Where one creditor has a lien upon two funds or properties and another creditor obtains a subsequent lien upon one of the funds or one of the properties, the subsequent lienor may require the first lienor to exhaust his lien on the fund or property not subject to the second lienor's debt, before proceeding to subject the fund or property on which both have liens. This well settled doctrine of marshalling assets and securities is subject to the important qualification that such course is necessary for the payment of both debts. *Hudkins* v. *Ward,* 30 W. Va. 204; *Kent* v. *Mathews and Jackson,* 12 Leigh (Va.) 573. The doctrine is applied only in cases where to compel resort to the singly

charged fund or property would not be productive of any additional risk, injury or delay to the double creditor. *Schultz* v. *Hansbrough et al.,* 33 Gratt. 567, citing Adams Eq. (6th Am. Ed.) 272 and cases cited in note. The doctrine of marshalling assets for the purpose of requiring the lienor on the double fund to resort to the fund for his debt not covered by a subsequent lienor is founded upon equitable reasons which do not permit one person, from wantoness or caprice, to invoke a remedy whereby another is caused injury or loss. Therefore, it must be apparent that loss or injury will be occasioned to that other person before he can dictate what remedy the prior lienor shall pursue. It has been held that a prior mortgagee, knowing that the mortgaged premises have been subsequently encumbered, will not be permitted to release portions of the premises from his mortgage and attempt to collect his entire debt out of the part not released, to the injury of subsequent lienors; but this equity does not apply where the unreleased portions subsequently encumbered are ample to secure both the primary and secondary encumbrances. The second lienor not being injured cannot complain. Story Eq. Jur. (14th Ed.) Sec. 868; *Kelley* v. *Whitney,* 45 Wis. 110, 30 Am. Rep. 697; *Blanchette* v. *Farsch,* 18 S. D. 20. In *Russell* v. *Randolph,* 26 Gratt. 705, 718, the court in stating the doctrine says it may be invoked, *"if that course is necessary for the satisfaction of the claims of both parties,* provided, always, this course does not trench upon the rights or operate to the prejudice of the creditor entitled to the double fund." The mortgage of the Trust Company is upon the entire 30,000 acres of Pittsburg seam of coal, while the debt of the Bank is decreed to be a lien on 4/15 of the undivided interest therein of the one-sixth interest of Joseph Barnes, and upon the one-half undivided interest of Cochran. The Bank should not be prejudiced by delay in the collection of its prior lien of which the Trust Company had notice when it took its mortgage, while the equities asserted in the bill are being litigated. Another requirement in the marshalling of assets and securities for the purposes invoked by the bill is that there must be one debtor of the creditors, and both funds must belong to one debtor. Pomeroy Eq. Jur. 5th Vol. Sec. 2291; *Lumber Co.*

v. *Lumber Co.,* 71 W. Va. 139. The Trust Company has recourse on the Coal Company for the payment of any lien or encumbrances on the coal. The mortgage or trust deed expressly warrants the title free from liens and encumbrances. There is no charge that the Coal Company is insolvent, or is not able to make good its warranty. It is surely a debtor of the Trust Company to the amount of the encumbrance on the coal which the latter would be required to pay to protect the property intact.

It not being clear from the pleadings and record that plaintiff will suffer irreparable injury by enforcement of the decree, or indeed any injury, we are of the opinion that it was error to refuse to dissolve the injunction. The extraordinary writ of injunction is only warranted in clear cases of irreparable injury. It should be cautiously used. On this appeal we can consider error only in that portion of the decree which refuses to dissolve the injunction. The demurrer to the bill can only be considered as it may affect the plaintiff's right to injunctive relief. We do not say that there are no equities in the bill or that it may not be amended, for that question does not arise on this appeal.

The bill charges that the debt of the Bank is tainted with usury. The makers of the debt are the only persons who could complain of that fact.

It is charged that the decree in the former suit, affirmed on appeal by this court, was erroneous because John Bassel, the trustee in the Cochran deed of trust, had died prior to the institution of that suit and that his heirs should have been made parties or another trustee should have been appointed. His death was averred in the bill, and his executrix made party defendant. The statute, sec. 6, chap. 132, Code, requires that the personal representative of a deceased trustee shall execute the trust. Even if the decree were erroneous in that respect, it would not be subject to collateral attack.

The decree will be reversed insofar as it denies dissolution of the injunction; the injunction will be dissolved and the cause remanded.

*Decree reversed; injunction dissolved; remanded.*