# CHARLESTOWN.

## HUDKINS *v.* WARD.

Submitted September 13, 1887.—Decided September 23, 1887.

*(WOODS, JUDGE, Absent.)

1. MARSHALLING ASSETS—CREDITOR AND DEBTOR.

A creditor, who has two funds open to him, while another creditor has but one, should not take the latter without placing the fund, which is exclusively within his reach, at the disposal of the creditor, whom he has deprived of the means of payment. (p. 207.)

2. MARSHALLING ASSETS—CREDITOR AND DEBTOR.

The creditor can not be delayed in the collection of his claim and may take the fund most easily attainable but on condition, that the creditor, who has been prevented from resorting to that fund for payment of his claim, takes his place with reference to the other fund. (p. 209.)

3. MARSHALLING ASSETS—CREDITOR AND DEBTOR.

W. owed H. $1,055.00 and executed a deed of trust to secure it. At about the same time W. owed C. and X. $1,600.00 and also held a chose in action for that sum against H., which he assigned to C. and X. to secure them. In W.'s name they sued H. for the amount and recovered judgment and sued out execution. H. thereupon filed a bill of injunction alleging the insolvency of W. and tendered to C. and X. the difference between the $1,600.00 and the $1,055.00 and prayed that the plaintiff in the execution, after this set-off was made, might be perpetually enjoined. The defendants

*Counsel below.

C. and X. answered the bill, resisted the set-off and showed, that W. had executed a deed of trust to secure H. the $1,055.00, and that W. was insolvent, and prayed, if the set-off was allowed, to be subrogated to the rights of H. in the deed of trust. The court perpetuated the injunction but did not decree the subrogation asked. On appeal, HELD :

The set-off was properly allowed because H. could not be delayed in the collection of his debt. (p. 210.)

*J. Hop. Woods* for appellants.

*T. A. Bradford* for appellee.

JOHNSON, PRESIDENT :

In 1881 R. E. Hudkins and D. C. Hudkins obtained from the judge of the Circuit Court of Barbour county an injunction restraining the collection of a judgment. By the bill it appears, that Simon Ward, who sued for the use of Crim and Woodford, recovered on the 28th day of October, 1881, in the Circuit Court of said county against the said Hudkins & Bro. a judgment for $1,575.31 and costs; that long before that time said Ward was indebted to said Hudkins and Brother in the sum of $1,055.00, for which he had executed his note dated the 14th day of January, 1881; that this note was executed to R. E. Hudkins alone, but in fact the debt was due to the plaintiffs jointly. The plaintiffs say, that they did not attempt to set-off said note in the action at law, because it was not then due. The bill further charges, that Ward is insolvent and has left the State of West Virginia. The bill tenders the residue of the money due on the said judgment after applying the $1,055.00 as a set-off against it and prays, that said set-off may be made, and for an injunction against said judgment and for general relief.

J. N. B. Crim and A. M. Woodford filed their joint answer to the bill averring the recovery of the judgment in the name of Ward for their use and admitting the insolvency of the defendant, and that he had left the State, but denying that the $1,055.00 was due to the plaintiffs jointly. They also aver, that on the 3rd of March, 1881, the said Ward executed a deed to Luther C. Elliot, trustee, conveying 750 acres of valuable land worth $18,000.00 or $20,000.00 to secure to R. E. Hudkins the payment of the $1,055.00, which he desires set

off against their judgment; that said deed was immediately recorded and is an ample security for the said plaintiffs' demand against said Ward. The answer also avers, that after the execution of the deed of trust Ward assigned his claim to said Crim and Woodford, upon which the judgment against Hudkins and Brother was recovered; that after the execution of said trust the said Ward executed other deeds of trust and confessed large judgments to secure other debts and thereby further encumbered his said real estate to the amount of not less than $15,000.00 and left the State, so that unless the respondents can collect their said judgment against the plaintiffs or be subrogated to their rights in the said trust-deed, they will be compelled to lose the $1,055.00 and interest. They therefore claim, that the plaintiffs have no right to have the said $1,055.00 and interest set off against their judgment; that plaintiffs are amply secured as to that amount by the trust-deed; that they have no right to abandon that security at the expense of the respondents; that they are entitled at least to be subrogated to the rights of the plaintiffs in the deed of trust, which they deem an ample security. They pray, that the injunction be dissolved, or if the plaintiffs are entitled to the set-off, that they may be subrogated to the rights of the plaintiffs in said deed of trust. The deed of trust is exhibited with the answer.

The deposition of R. E. Hudkins was taken, in which he proves, that, although the $1,055.00 note was executed to him alone, yet the debt was due to his brother and himself jointly. There was a general replication to the answer of the defendants; and no depositions were taken for the defendants.

On the 23rd day of July, 1885, the case was heard, and the court permitted the set-off to be made, and, as the residue had been paid to the defendants, Woodford and Crim, perpetually enjoined the judgment and decreed costs against the defendants but did not subrogate the said defendants to the rights of the plaintiffs in the deed of trust. From this decree Crim and Woodford appealed.

The aim of a court of equity as regards the payment of debts is equality—that the assets shall be so distributed as to satisfy all the creditors; and a creditor will not be allowed

arbitrarily to defeat this rule by throwing the whole burden on a particular fund. This results from the dictates of natural justice, that, where there is enough for all, it shall be so distributed as to give to each his due. A creditor, who has two funds open to him, while another creditor has but one, obviously should not take the latter fund without placing the fund, which is exclusively within his reach, at the disposal of the creditor, whom he has deprived of the means of payment. And if he neglects or refuses to fulfil this duty, it may be enforced by a decree of subrogation. 2 Lead. Cas. in Eq. 1,255 n. The principle, on which a court of equity proceeds in marshalling assets, is, that a creditor having a choice of two funds ought to exercise his right of election in such a manner as not to injure other creditors, who can resort to only one of these funds. But if contrary to equity he should so exercise his legal rights as to exhaust the fund to which alone other creditors can resort, then these other creditors will be placed by a court of equity in his situation, so far as he has applied their funds to the satisfaction of his claim. Marshall, C. J., in *Alston* v. *Munford*, 1 Breck. 266.

In *Cralle* v. *Meene*, 8 Gratt. 496, the testator had given a bond to indemnify an endorser, and the holder of the note was allowed to stand in the place of the endorser and be paid as a creditor by specialty out of the real assets, although the endorser had not been compelled to pay the note.

See also *Steamboat Co.* v. *New Jersey Co.*, 1. Hopk. Ch'y 460, *Hawley* v. *Mancius*, 7 Johns. 174, *Goertson* v. *Booth*, 19 Johns. 485, *Ramsey's Appeal*, 2 Watts 228.

In *Brinkerhof* v. *Marvin*, 5 Johns. Ch'y 321, the bill stated that in July, 1819, J. and Z. Taylor of Saratoga being largely indebted to the plaintiff for goods sold to them, executed a bond to the plaintiff for the amount due with warrant of attorney to confess judgment thereon; that judgment was entered up in the Supreme Court on the bond the 27th of November, 1819; that on the 3d of January, 1820, the defendants, W. J. and A. Marvin, entered up a judgment against J. Taylor by confession on filing special bail without a writ or declaration or a *cognovit actionem* for $5,755.60 collateral security for endorsements then made and thereafter to be made for J. and Z. T. and for money then due or there-

after to be due; that the defendants had at that time en-dorsed a note given to J. and Z. T. for goods previously pur-chased; that on the 7th of April, 1820, the defendants entered up another judgment against Z. T. for the like sum of $5,755.60 on filing a special bail and a *cognovit actionem* in like man-ner, which was given as security for the purposes above mentioned for partnership-debts of J. and Z. T.; that the de-fendants issued execution on these judgments in the counties of New York, Washington and Saratoga, in which personal property of J. and Z. T. was taken and sold. The bill charged, that the defendants colluded with J. and Z. T. to defeat the just claims of the plaintiffs; that the purchase of goods was colorable or for an inadequate amount; and that J. and Z. T. were never indebted to the defendants in the full sum direct-ed to be levied on the executions so issued; and that the defendants held personal securities of J. and Z. T. to a large amount; that the defendants have caused the real estate of J. and Z. T. to be advertised for sale under their judgments and executions; that the defendants insist on the priority of the lien of their judgments under an order of the Supreme Court directing said judgments to be first satisfied &c. The bill prayed for an injunction and a discovery. The defendants answered the bill, and among other defences relied on is this, that the defendants had offered to assign their judgments to the plaintiffs and to put them completely in their place on being paid the principal interest and costs due to them, which offer was refused, but which they now repeated.

The Chancellor said: "The defendants in their answer offer to give the plaintiffs entire substitution, which would apply as well to that bond and mortgage as to the judgment. This is all that the plaintiffs can reasonably ask for; and it would not be equitable to detain the defendants from their remedy under the judgment, until they had engaged in and con-cluded a litigation as to a personal security of such doubtful rights and uncertain results. The defendants have therefore shown thenselves to be creditors of J. and Z. T. with equal equity to the plaintiffs; and they have a legal preference by the decision of the Supreme Court, of which they ought not and can not upon safe and sound principles be deprived by this Court. I shall accordingly grant the motion to dissolve the in-

junction, unless the plaintiff shall in twenty days elect to pay to the defendants the debt and costs claimed by them and shown by their answer to be due and the costs of this suit; and in that case the amount is to be ascertained and the costs taxed by a master, and the judgment and the bond and mortgage to be assigned."

In *Harrison* v. *Skillman*, 33 Barb. 378, it was decided, that the general principle is, that, when a creditor has a lien on two funds for the same debt, and another creditor has a subsequent lien on one of the funds only, equity will require the former to resort in the first instance to the fund, upon which the subsequent creditor has no lien, for the satisfaction of his debt. The rule however is subject to some qualifications. Such a course must appear to be necessary for the payment and satisfaction of both debts, and it must not operate to prejudice the rights of the first creditor to the double fund. Neither must there be any reasonable doubt of the sufficiency of the one fund to satisfy the debt of the first creditor. When in a foreclosure suit brought by the holder of the first lien there is reason to think, that both the real estate mortgaged and certain personal securities, which are subject to the plaintiff's lien, would, if brought to sale, be insufficient to pay the debt and interest due from the mortgagor, the equitable rule does not apply in favor of subsequent mortgagees or judgment-creditors. In such circumstances all that the subsequent incumbrancers have a right to claim, is a judgment awarding to them after the payment of the plaintiff's debt the right in the order of the priority of their respective liens to be subrogated to the plaintiff in respect to the securities then held by him.

In *Woodcock* v. *Hart*, 1 Paige 185, the plaintiff was a judgment and execution creditor of James Dreamer. The defendant had also an older judgment and execution against the same person, and Dreamer had not sufficient property in the State to satisfy both. The defendant had also an assignment of certain real and personal property in New Jersey as collateral security for his debt, which, in his answer he alleged, was subject to a prior mortgage, and that the title thereto was doubtful. The complainant applied to him to delay a sale under the execution and apply the Jersey security in

the first place in satisafction of the debt. This was declined by the defendant; but he offered to assign his judgment and all the collateral security, which he held, over to the complainant, if he would pay the amount due to him on the judgment, which amount he offered to warrant to be due. The complainant declined this offer and filed his bill and obtained an injunction. The Chancellor said: "Under the circumstances of the case the defendant was not obliged to delay the collection of his debt, until he could apply the proceeds of the Jersey property. The assignment of the Jersey property, although absolute on its face, was only a mortgage; and of course no good title can be given until a foreclosure of the equity of redemption against Dreamer. It would be inequitable for the court to compel him to submit to that delay, when he offers to give the complainant all the benefit, which can be derived from that collateral security, by assigning it to him together with the judgment on receiving the amount, which he is entitled to collect immediately by a sale on his execution. The injunction must be dissolved, unless the complainant within ten days after service of a copy of the order to be entered in this cause pays to the defendant or his solicitor the amount of the defendant's execution and interest on the terms of the offer contained in the answer."

In this case it appears, that on the 14th day of January, 1881, Simon Ward was indebted to R. E. Hudkins & Bro. in the sum of $1,055.00; that on the 3rd day of March, 1881, he executed a deed of trust on a large tract of land to secure said debt, which deed was recorded on the 5th day of March, 1881. On the 28th day of March, 1881, Simon Ward for the use of Crim and Woodford recovered a judgment against Hudkins and Bro. for $1,575.31. The said Crim & Woodford proceeded in the name of Ward to collect the amount of this judgment by execution. On the 4th of November, 1884, the injunction was granted. The defendants resisted the set-off and asked, that, if it was allowed, they might be subrogated to the rights of the plaintiffs in the deed of trust. The court allowed the set-off but said nothing as to the subrogation. The question as to the defendant's right to subrogation was clearly in issue, and it was silently denied to them. Was

this equitable? Hudkins & Bro. had two funds, to which they could resort for payment. They could set off the $1,055.00, or they could resort to their deed of trust. Shortly after the deed of trust was given Crim and Woodford bought the claim against them. The $1,055.00 was properly set off, because, as we have seen, Hudkins & Bro. could not be delayed in the collection of their claim; but in equity they ought to have offered to assign to Crim & Woodford this claim against Ward. Crim & Woodford were compelled to pay them the $1,055.00 by having it set-off, and then surely under the principles of equity they were entitled to be subrogated to their rights, whatever they might be under the deed of trust. They certainly had equal if not superior equity to the subsequent lienors, if there were any, on Ward's land; and they were prior in time. They could not be compelled to allow the $1,055.00 to be set-off without at the same time being placed in the shoes of Hudkins & Bro. as to the trust. The court refused to require this, and whether they could claim it or not, they would be met with the claim, that under the pleadings in this cause the court had necessarily decided they were not entitled to subrogation.

The decree of the Circuit Court is reversed with costs against Hudkins & Bro. and this Court proceeding to render such decree as the Circuit Court should have rendered, the same decree is entered with this important addition thereto: "But the defendants, J. N. B. Crim and A. M. Woodford, are hereby subrogated to all the rights and interest of R. E. Hudkins and R. E. Hudkins & Brother in and to the deed of trust executed on the 3rd day of March, 1881, by Simon Ward to Luther C. Elliott, trustee, to secure R. E. Hudkins the sum of ten hundred and fifty-five dollars, due by single bill of date January 14, 1881, with interest thereon from the date thereon, which deed was recorded in the county of Barbour on the 5th day of March, 1881, a copy of which is filed as an exhibit with the answer of the defendants in this cause."

As to the reversal of the decree with costs my associates do not agree with me, that it sufficiently appears, that the error was to the prejudice of the appellants, and that they suffered more than $100.00 damages, notwithstanding the fact, that it is admitted, that Ward is insolvent, and it does

not appear, that there were no other liens on his land, when the deed of trust filed with the defendant's answer was recorded, there being a general replication to the answer and no proof or evidence as to these facts. It seems to me, that in this state of facts and in the absence of anything to the contrary it must be presumed, that the deed of trust is worth its face. My associates think, that under the circumstances of this case there is no such presumption, and that it should affirmatively appear, that the appellants were prejudiced. This fact not appearing, as they think, the decree is corrected as above indicated and affirmed with costs to the appellee and one cent damages.

DECREE CORRECTED AND AFFIRMED.