Sydnor J. Tucker, as Trustee of the Estate of Bula E. Croker, Bankrupt, v. Crown Corporation, a Maine Corporation, *et al.*

183 So. 740.

Division B.

Opinion Filed November 2, 1938.

518

*Paty, Warwick & Mooney,* for Appellant;

*J. W. Salisbury* and *Coleman & Cook,* for Appellees.

BROWN, J.—The subject matter of this controversy is a surplus fund arising from a foreclosure sale. On July 14, 1931, R. E. Robinson filed in the Circuit Court of Palm Beach County, Florida, his bill of complaint to foreclose a mortgage encumbering two adjoining parcels of land, hereinafter referred to as Tracts "A" and "B." Pending the prosecution of the mortgage foreclosure suit, on October 5, 1931, Bula E. Croker, the owner of the two parcels of ocean frontage land, gave a mortgage on Tract "B" to appellee Crown corporation. Crown Corporation was then made a party defendant to the foreclosure suit and Robinson was declared to be the holder of the prior lien on Tract "B," (174 So. 737, 128 Fla. 249.)

On May 2, 1932, also pending the prosecution of the foreclosure suit, the appellee John Magee obtained a judgment at law against Bula E. Croker, the owner of the lands. Other encumbrances not involved in this suit, were outstanding against Tract "A," the larger of the two tracts, which encumbrances, according to the allegations in plaintiff Robinson's motion for confirmation of sale, aggregated approximately $1,192,000.00. On September 13, 1937, Bula E. Croker was adjudicated a bankrupt, and Sydnor J. Tucker, appellant, was subsequently appointed trustee of the bankrupt estate and allowed to intervene in the foreclosure suit.

On October 4, 1937, both of the tracts were offered for sale at foreclosure sale under a foreclosure decree entered in favor of the plaintiff Robinson. Crown Corporation, appellee, bid the sum of $252,000.00 and paid $76,500.00 as a

deposit upon its bid which was used to satisfy the lien of Robinson.

On October 9, 1937, John Magee, the judgment creditor, was allowed to intervene and was made a party defendant. On the same day appellee Crown Corporation filed two petitions in the cause, one praying the court for an order finding and confirming that the sum of $252,000.00 bid by the purchaser was bid on Tract "B" and that all funds in the hands of the Special Master are to be held by him to pay in order of their priority all liens on Tract "B," and the other praying that the court find and adjudicate the amount due and owing to Crown Corporation under its junior lien and by order waive and relieve petitioner from paying the further sum of $176,000.00 into the registry of the court, but allow and direct petitioner to credit said amount upon the debt owing petitioner as so found to be due by the court.

Sydnor J. Tucker, the trustee, in his bill of intervention had prayed that the surplus be paid over to him to be administered in the bankruptcy proceedings. He also filed motions to dismiss the petitions of Crown Corporation filed October 9, 1937, which motions were denied by the Court. It is from this order that Tucker, the trustee, has taken this appeal.

The appellant has stated one question in the brief filed on his behalf, which is briefly stated as follows:

"Is a junior lienor as to a portion only of land sold at foreclosure sale entitled to have applied to the payment of the junior lien the surplus arising from the sale of all the land?"

It is well settled that, if a suit in a state court to foreclose a valid mortgage is commenced before a petition in bankruptcy is filed against the mortgagor, it may be prosecuted in the state court without interference from the court of bankruptcy. The rules of comity apply and the first court

to secure possession and custody of the property, through its officers, or whose jurisdiction has first attached to the *res,* has exclusive jurisdiction to hear and determine all controversies in regard thereto. In Re Hurlock, 23 Fed. (2d) 500; Wade v. Clower, 94 Fla. 817, 114 So. 548.

In such a case the trustee in bankruptcy takes the title to the mortgaged property subject to the foreclosure proceedings, and is entitled to any excess over the amount of the liens established in such proceedings. 6 Am. Jr. 632. Bankruptcy, Sec. 203; In re John H. Gerdes, 102 Fed. 318, 4 A. B. R. 346.

The trustee holds the same claim upon the assets of his bankrupt as of the date of the filing of the petition in bankruptcy that an unsatisfied judgment creditor has. Sec. 47-A(2) of Bankruptcy Act; U. S. Code, Title 11, Chapter 5, Section 75. In the instant case Bula E. Croker filed her petition and was adjudged a bankrupt on September 13, 1937. In effect then, the trustee may be said to have an execution lien on Tracts "A" and "B" as of that date, while Crown Corporation obtained a mortgage lien on Tract "B" in October, 1931, and Magee obtained a judgment lien on Tracts "A" and "B" in May, 1932.

The appellant Tucker, trustee in bankruptcy, contends that his lien on Tract "A" is superior to any claim of Crown Corporation as to the surplus arising from a sale of that tract. That the failure of Crown Corporation to have the property sold in parcels creates a condition which now makes it legally impossible to determine what portion of the purchase price was intended for Tract "A" and what portion was intended for Tract "B." Therefore appellant contends he is entitled to the entire surplus.

In the case of Bernhardt v. Lymburner, *et al.,* 85 N. Y. 172, a situation somewhat analogous to the one at bar was presented. In that case the mortgagor executed three

mortgages on a lot with a front of one hundred feet. The first mortgage, which was being foreclosed, covered the whole lot. Lyniburner and Torrey held a second mortgage on the south sixty feet of the lot, and Howard was the holder of a third mortgage on the north forty feet of the lot. The decree of the lower court directed that the north forty feet should be sold first, to which the defendant Howard excepted. The appellate court said:

"The general rule is that where there are several successive grantees of different portions of mortgaged premises, the land on foreclosure is to be sold in the inverse order of alienation, and this secures the equitable rights of the parties as between themselves. The first grantee of a part of the mortgaged premises, who has purchased for full value and without any agreement to assume the mortgage, may justly claim that the burden of the incumbrance shall be cast in the first instance upon the remaining lands of the grantor, and a second or other grantee takes subject to the equity of the prior grantee. The same principle is applicable to the case of successive mortgagees of parts of mortgaged premises, on a foreclosure of a prior mortgage on the whole property where by its application the equitable rights of all parties will be secured. (Stuyvesant v. Hall, 2 Barb. Ch. 151.) But this is a rule of equity and yields to circumstances. (Guion v. Knapp, 6 Paige, 35; Kellogg v. Rand, 11 id. 59.) The rule is established to adjust and preserve the equitable rights of claimants holding distinct interests in parts of the mortgaged property, according to the maxim *prior tempore potior jure.*

"The application of the rule between grantor, and successive grantees of parts of mortgaged premises, if applied in this case, by requiring that the forty feet should be first sold, would destroy, to a great extent, the security of the Howard mortgage. If the protection of the mortgagees in

the second mortgage required that this course should be taken, there would be no alternative, and the rule should be applied. But if the land can be sold so as to protect both securities, then equity requires that the sale should be so made; or if they cannot be protected in full, then that the sale should be made so as to make the loss upon the Howard mortgage as small as possible, consistently with the rights of all parties. The object of the rule adverted to will then be attained, although the rule itself in this particular case, is departed from. We think the judgment in this case should direct that the whole lot be sold on the plaintiff's mortgage, and that out of the proceeds, the liens to be paid according to their priority."

In the case of Ely v. Perrine, 2 N. J. Eq. (1 Green) 396, which was a mortgage foreclosure, the complainant's mortgage covered several tracts of land, each of which was covered by subsequent incumbrances. The decree settled the priorities of the various liens and directed the whole land to be sold and payment to be made according to the rights of the parties. The New Jersey court said:

"The complainant's mortgage covered all the land sold, and having all persons in interest in court, I see no other course than to decree the sale of the whole property, and out of the proceeds to pay the several demands against it."

Appellees also cite Waybright v. Turner, 129 Fla. 310, 176 So. 424; Pomeroy's Eq. Juris. 4 Ed., Sec. 396 and 1414; 18 R. C. L. 463; Hudkins v. Ward, 30 W. Va. 204, 3 S. E. 600, and other authorities tending to show that Crown Corporation could not have successfully moved the court for a marshalling of assets, or a sale of the two tracts separately; also Anthens v. Schraeder, 68 Neb. 370, 94 N. W. 611, and same case 79 Neb. 355, 112 N. W. 563, and other cases, which it is argued tend to support the contention that Crown Corporation was entitled to the entire

surplus, which was not quite equal to the amount due it on its mortgage on tract "B," upon the theory of equitable subrogation.

*Per contra,* appellant contends that, inasmuch as Crown Corporation had bid in the property as a whole, and the sale had been confirmed, it could not be allowed to change its bid, so as to make it applicable only to Tract "B," as prayed for in its first petition. This contention we deem to be well founded. But the court below did not grant this petition; it merely declined to strike either of the two petitions filed by Crown Corporation; the fact that they had been filed was merely mentioned in the order of confirmation. So no harmful or reversible error is shown. The second petition was not without merit.

Appellant further contends that appellee is not entitled to any portion of the surplus; that all of it should be paid over to appellant as trustee in bankruptcy; that while no question of allocating the purchase price on a front foot or acreage or other bases is presented by the appellant's petition, in no event could Crown Corporation be credited on its junior lien on Tract "B" for any more of the surplus than that portion of it which represents the amount received for Tract "B," to be determined by allocating the purchase price over the entire 10,281 feet of frontage; and that, before any decision of such matters by the court, the appellee should be required to pay into court the entire amount of its bid in cash. In support of his contention appellant cites Jackson v. Dutton, 46 Fla. 513, 35 So. 74; Dunham v. Smith, 98 Fla. 249, 120 So. 761; 18 R. C. L. 545; Vines v. Willcutt, (Ala) 102 So. 25, 35 A. L. R. 1301; Quinn Plumbing Company v. New Miami Shores Corporation, 100 Fla. 413, 120 So. 690, 73 A. L. R. 600; Harvison v. Griffin, 155 N. W. 655; Shear v. Robinson, 18 Fla. 379, 451.

The contention of appellant that in no event could the Crown Corporation be credited on its junior lien for any more of the surplus than that portion of it which represents the amount received for Tract "B" to be determined by allocating the purchase price over the entire 10,281 feet of frontage, is not logical, in that it fails to recognize the very pertinent element of the *real* value of each of the two tracts, which may not be controlled by the mere size thereof.

In support of its contention that before Crown Corporation is permitted to raise any question as to the disposition of the surplus fund it should pay the surplus into the registry of the court, appellant cites Jackson v. Dutton, *et al.,* 46 Fla. 513, 35 So. 74, and Dunham, *et al.,* v. Smith, 97 Fla. 386, 120 So. 761. In neither of the cited cases was the purchaser at the foreclosure sale one holding a junior mortgage on the property or any lien or claim as to the surplus. In both cases the junior mortgagee was attempting to establish his rights to the surplus, if any resulted, by a cross bill filed in answer to the bill to foreclose. The language of the court in Jackson v. Dutton, *supra,* was as follows:

"The court has ample power upon the application of Dutton & Co. based upon their answer to direct that the surplus, if any, be paid into the registry of the court (Clark v. Carnall, 18 Ark. 209), and thereupon Dutton & Co. can intervene by petition and have the court adjudicate their right to such surplus. Eldridge, Dunham & Co. v. Post, 20 Fla. 579. Such relief can not be granted Dutton & Co. upon their answer alone (Wooten v. Bellinger, 17 Fla. 289), but it can be granted upon petitions as above stated. The demurrer to the cross bill should have been sustained."

Thus, the question was not before the Court as to whether a purchaser, who is also a junior mortgagee having

a lien on the surplus, must first deposit the surplus into court. There is certainly no language in the decisions which indicates that such a step is mandatory. Crown Corporation, in its petition, prayed that the Court find and adjudicate the amount due and owing to it under its mortgage and enter an appropriate order or decree thereon. It would serve no useful purpose to have Crown Corporation deposit the surplus into court until the court has first determined what is to be allowed it as a credit on its mortgage debt.

In his brief appellant contends that there is no justiciable controversy until the amount due on the lien of Crown Corporation is ascertained in a proper proceeding. It may be regarded as settled that a court of equity sitting to distribute an excess brought into the custody of the court, such as proceeds from a foreclosure sale, has full and complete jurisdiction to determine all justiciable rights made necessary to be determined, in order to fix the priorities of claimants. Tuttle v. Ehrehart, 102 Fla. 1129, 1133, 137 So. 245, 246. In the instant case Crown Corporation is not attempting to claim a right in the surplus without proper proof of the amount due. A certified copy of the mortgage, together with an affidavit of an officer of Crown Corporation, is attached to the petition and the first prayer of the petition prays the court to "find and adjudicate the amount due and owing to your petitioner under the said mortgage, Petitioner's Exhibit 'A'."

Another question that is presented is whether Crown Corporation has the right to credit the amount of its lien on the bid made by it at the sale. In Becker Roofing Co. v. Wysinger, et al., (Ala). 124 So. 858, the plaintiff was attempting to foreclose a mechanic's lien on land encumbered by three prior mortgages. The mortgagor had become

bankrupt after institution of suit and in discussing the proper decree to be rendered the Alabama Court said:

"The first mortgagee should be accorded, in the decree, the right to bid at such sale to the amount ascertained to be due on the first mortgage debt, and the same (authorized in the decree) be credited to the amount of such successful bid made by such mortgagee or his privy, by contract, or estate, or of blood, if he desires to bid. If a subsequent mortgagee or lienholder is the successful bidder, he should be required to pay in cash the amount to secure or necessary to discharge all prior liens and costs before being credited with the amount of his lien on his bid."

In the instant suit Crown Corporation made a cash payment of $76,500.00, which was sufficient to pay the costs and extinguish the lien of Robinson. It is now seeking to credit the amount of its lien on tract "B" on its bid as a purchaser of both tracts. If its mortgage had covered both tracts, such credit should undoubtedly be allowed, but such is not the case. Its lien attached only to tract "B."

In determining who is entitled to surplus proceeds arising in a foreclosure sale, it is the general rule that all incumbrances on mortgaged premises inferior to the mortgage on which sale is based, must be paid in the order of time in which they respectively become liens, except as some equitable right demands a different order of payment. 2 Wiltsie on Mortgage Foreclosure (4th Ed.) 1240, Sec. 977; Waybright v. Turner, 129 Fla. 310, 319; 176 So. 424, 428.

None of the cases cited in the briefs present just such a state of facts as this case presents. While under some of the above authorities cited by appellee, we might possibly be warranted to hold otherwise, we are nevertheless of the opinion that the lien of Crown Corporation was transferred *only* to that proportion of the surplus on the sale of the two tracts, which the value of tract "B," in proportion to the

value of tract "A," would entitle it to, inasmuch as Crown Corporation's mortgage encumbered only one of the two tracts, viz.: tract "B." In order to arrive at the proportionate values, the chancellor may find it necessary to have evidence submitted, and in ascertaining the values of the respective tracts, at the time of the sale, the amount of prior incumbrances existing on each of them would have to be deducted from their market value, if unencumbered in order to arrive at the real net value of each tract. If, as appellee contends, the prior incumbrances on tract "A" subject to which the property was sold at foreclosure sale, equaled or exceeded its gross or market value at the time of the sale, Crown Corporation would be entitled to have applied to the payment of its junior mortgage on tract "B" all the surplus arising from the sale of all of said lands.

The decree of the Circuit Court is affirmed, and the cause remanded for further proceedings consistent with the foregoing opinion.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.