## Jurkowitz Estate.

Argued May 25, 1948.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Jerome I. Myers,* with him *Alexander S. Gorny,* for appellant.

*Paul A. McGlone,* with him *J. Julius Levy,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, July 6, 1948:

This is an appeal from a decree of an orphans' court relating to practice and procedure under the Orphans' Court Partition Act of June 7, 1917, P. L. 337, as amended by the Act of June 24, 1939, P. L. 707, 20 PS, 1181 et seq. The question is whether the court erred in authorizing, *nunc pro tunc,* the trustee to take a receipt from the purchasing heir for part of the purchase price representing his distributive share in the proceeds, instead of requiring the heir to pay the whole of the purchase price in cash, and later to receive from the trustee his distributive share of such proceeds.

Benjamin Jurkowitz and his brother Philip were owners, tenants in common, of a business property in the City of Scranton. Benjamin died intestate on September 7, 1928, leaving to survive him as his heirs and next of kin a widow and four children. On June 6, 1946, the widow and four children petitioned the orphans' court for partition of the real estate, joining decedent's brother Philip, the co-owner of one half interest in the premises. We need not recite in chronological detail the various steps taken in the litigation which thereafter followed. All interested parties having been joined, the court, under section 6 of the Act, appointed three commissioners, on the nomination of the interested parties, to divide or value the real estate sought to be partitioned. The commissioners reported that the real estate could not be conveniently parted or divided and appraised its value at $12,500. Pursuant to section 11 of the Act, the court then entered a rule on all persons interested to accept or refuse to take the real estate at the appraised

value. *All* of the parties accepted the real estate at the valuation fixed by the commissioners. The learned court below ruled that because *all* parties had accepted, there must be competitive bidding. This is provided by section 12 of the Act, where interested parties are authorized to ". . . *offer in writing the highest price therefor above the valuation returned. . . .*" The judge fixed a day when the interested parties "(should) be given the opportunity of presenting one bid in writing," all bids to be over the appraisement fixed by the commissioners. On the day fixed, in open court, prior to submitting sealed bids, the court announced:

*"The successful bidder will be required to pay 25 per cent of his bid into court today and the balance on tender of a marketable title by the trustee."*

As before stated, the appraised value was $12,500. Two sealed bids were submitted. One, being the joint bid of the heirs and next of kin of Benjamin Jurkowitz, was for $17,025.00. The other bid was for $14,000, submitted by Philip Jurkowitz. A certified check for $4,300 accompanied the successful bid. This was slightly above the 25% required by the judge to be deposited with the sealed bid.

On April 22, 1947, the heirs and next of kin of Benjamin Jurkowitz authorized the trustee: ". . . to apply (their) respective distributive shares of the proceeds of the said sale towards the purchase price . . ." and also to convey title to the real estate to "their duly appointed nominee Arthur Z. Jurkowitz."

The trustee (who had previously been appointed and qualified March 31, 1947) in pursuance to such direction, received $8,512.50 in cash (being $4,212.50 plus $4,300 paid at the time of submission of the bid), and credited the successful bidders with $8,512.50 (their distributive share, being one half of the proceeds)—making a total of $17,025, the amount of the successful bid. On April 30, 1947, the trustee executed and delivered a deed to the heirs' nominee, which was recorded. On January 2,

1948, the court made an order ratifying and confirming the action of the trustee "in applying the purchaser's one-half distributive share of the proceeds of sale toward the purchase price" and directed that the decree be entered *nunc pro tunc,* as of April 30, 1947, authorizing the execution and delivery of the deed, which had theretofore been made on that date. The grantee was directed to pay an additional $1,000 to the trustee to indemnify against the grantee's share of possible costs and expenses, which has been done.

The trustee having so deeded the real estate to the highest bidder on April 30, 1947, the purchaser, on July 7, 1947, cited Philip Jurkowitz, the unsuccessful bidder, who was in possession of the real estate, to deliver possession. Upon answer and issue joined, the court below made the citation absolute. Philip Jurkowitz, appellant, was directed to deliver possession of the premises to the appellee. This appeal followed.

There are two decrees, each dated January 2, 1948, one confirming, *nunc pro tunc,* the sale by the trustee to appellee, and the other decreeing that appellant deliver possession of the real estate. Both are final decrees. It is not clear from the record which of the two decrees is appealed from. As they are interrelated we shall treat the appeal as taken from both of them.

The chief complaint of appellant is that he was prejudiced by the court below in permitting appellee, the successful bidder, to apply the distributive shares toward the purchase price. At the time of the receipt by the court of sealed bids the judge stated "The successful bidder will be required to pay 25 per cent of his bid into court today *and the balance on tender of a marketable title by the trustee."* We understand appellant's contention to be that: these words mean that the successful bidder must pay the full amount of his bid *in cash* to the trustee before a deed can be given. We do not agree with this contention. We attribute no such meaning to the court's language. The judge did

not *say* that the entire bid must be paid *in cash,* nor can such a meaning be fairly *implied.* 25% of the bid *was* required to be paid *in cash* and was in fact so paid. The balance, consisting of a credit for the *value of the bidder's distributive share* plus the difference *in cash,* was paid at the settlement. Appellant bid $3,025 less than appellee. No one questions that a full, fair and adequate consideration was obtained for the real estate. The amount bid and the method of making a cash settlement have no relation to each other. It would be a useless gesture—and perhaps an embarrassing and harmful one—to require an heir who successfully bids in a property to pay the *whole* purchase price in cash and later to have returned to him his distributive share out of the very cash he had paid at the settlement. Such a contention is rejected in *Wagner's Estate (No. 1),* 59 Pa. Superior Ct. 349, where Judge TREXLER said, p. 352, ". . . *The consideration to be paid . . . so far as it was met by (the heirs') shares in the estate, may be regarded as an advancement made to them by the accountant"* (emphasis supplied). See text and cases cited in Hunter's Pennsylvania Orphans' Court Common Place Book, Vol. II, p. 1001.

While there appears to be no statutory requirement for a trustee in partition to apply to the court for leave to credit the undisputed value of a distributive share against the purchase price, any possible doubt is removed in this case because the court expressly granted permission to allow the credit. True the permission was granted *nunc pro tunc* after the credit had been actually allowed and settlement made, but this is the effect of such an application. A *nunc pro tunc* entry is an entry made *now,* as of *then,* to have the effect as if the event had occurred on the former date. Its office is to supply an omission in the record caused through possible inadvertence or mistake. See: *Stilwell v. Smith,* 219 Pa. 36, 67 A. 910; *Schaeffer, to use, v. Coldren et al.,* 237 Pa. 77, 85 A. 98.

As the orphans' court entered a decree in partition and the trustee has deeded the land in accordance with the court's direction, the court may properly make an order commanding that possession be surrendered: *Appeal of Joseph Church et al.,* 10 Sadler 230. The Act of April 20, 1905, P. L. 239, as amended by the Act of March 21, 1945, P. L. 47, 12 PS, 2571, provides a method whereby a purchaser at a judicial sale may obtain possession. No appellate case has been cited, and we find none, relating to this Act. It has, however, been applied in courts below: *Spiegel's Estate,* 21 Lackawanna Jurist 332 (SANDO, P. J.); *Kelley Estate,* 22 Luzerne Legal Register 212 (HELLER, P. J.); *Estate of Moss,* 39 Luzerne Legal Register 91 (HOURIGAN, P. J.). The decree for possession was properly entered.

We note that Mr. Lavelle was appointed *both* trustee and auditor. This we regard as irregular. The same individual ought not act in both capacities. An auditor should not audit his own account as trustee. The appointment of Mr. Lavelle as *auditor* must be rescinded. A trustee in partition is required to file an account of receipts and disbursements. Such an account is filed and audited in the same manner as any other fiduciary's account. The court is required thereafter to enter a decree of distribution. The extent of encumbrances and taxes must be ascertained and the correct distributive shares of the parties must be determined. This duty may be performed by the court itself or be referred to an auditor, under section 39 [a] of the Orphans' Court Partition Act, supra.

The decree is affirmed and the record remitted in order that the court may comply with the direction in this opinion. Costs to be paid by appellant.