DREW, Justice.
The Honorable Harry N. Sandler, Circuit Judge of Hillsborough County, has certified to this Court, in accordance with Supreme Court Rule 38, 30 F.S.A., the following proposition of law for determination.
“Does the Circuit Court in a partition suit -have authority in its discretion to allow an owner-purchaser at the sale in partition to receive credit for his proportionate share of-the proceeds of. sale .in making settlement for the purchase price of the property, where the proportionate costs, charges, expenses and attorneys fees assessed against the purchasing owner are deposited in court, and the proportionate proceeds to which the remaining owners are entitled are also deposited in Court (or one-third is deposited and the balance secured to the remaining owners by a bond and mortgage where for good cause shown, such conditions of sale are adopted) ?”
We conclude that the question propounded by the learned Circuit Judge is one without controlling precedent in this State and is hence entitled to an answer under the provisions of Rule 38, supra.
The Statutes germane to the question are Sections 66.01 and 66.07, Florida Statutes, 1951, F.S.A. These statutes pead as follows:
“66.01 Partition of property; jurisdiction
“Suits for a partition of real estate shall in all cases be by bill in chancery, and all proceedings, except where herein otherwise provided, shall be .as in other cases in chancery.”
“66.07 Partition of property; sale where nondivisable
“(1) The order of sale. — If the commissioners shall report to the court that the lands, tenements or hereditaments of which partition shall have been directed are so situated that a partition thereof cannot be made without great prejudice to the owners of the same, and if the court shall be satisfied that such report is just and correct, the court may thereupon, upon application of either party, upon notice to ■ the others before the court, if said others be in the state, order the premises so situated to be sold at public auction to the highest bidder, by and under the direction of the said commissioners, and the moneys arising from such sale to be paid into the court, to be divided among.the respective.parties interested in .proportion to their shares or interest.
“(2) Conditions of sale. — For. good cause to be shown, the court may order such sale to be made upon ar reasonable credit for part or all of the pur *677 chase money, but in .all cases at least one-third of the purchase money shall be paid down, unless all parties consent to a credit for the whole; and in all cases the purchase money not paid down shall be secured by bond and mortgage on the premises, and such other additional security as the court shall, direct.
“(3) Confirmation of sale and conveyance. — Such sale must 'have been reported to the court, and the mone3j arising therefrom paid into the court, and the sale approved by the court and a conveyance .ordered, before any conveyance in pursuance of such sale shall be made by the commissioners.”
It is apparent from the question propounded that the lower court has previously determined that the property involved in the partition suit is incapable of division in kind. It is therefore required by the statute that the property be sold to the' end that it be converted into money so that a division can be made.
To accomplish the foregoing purpose a judicial sale is provided for. The statute provides that such sale “shall be as in other cases in chancery.” This Court has long recognized the principle that no useful purpose could be served in requiring a bondholder or a mortgagor to pay cash to a court officer conducting a judicial sale when he would be entitled to immediately have it paid back to him under the decree authorizing the sale. For instance, as to a bondholder, in Sammons v. Trust Co. of Fla., 102 Fla. 711, 136 So. 442, we said:
“There is some contention that the terms of the final decree are such as to. require a bondholder bidding to pay his bid in cash, thus depriving such bondholder of the privilege of using the bonds held by him in part payment of his bid. As we construe the' decree, it does not preclude a bondholder who is successful bidder for the property to use his bonds to pay their proportionate value of the bid. It appears to be held in the majority of jurisdictions that a bondholder, being the successful bidder for property at a foreclosure sale in a suit to enforce the .payment of bonds, may use his bonds in payment of his bid to the extent of the proportionate value of such bonds, as ascertained by the amount realized at the foreclosure sale. That is, if the property sells for enough to.pay only SO per cent, of the face of the bonds outstanding, then the bonds in the hands of the bidder can be used as part payment at SO per cent, of their face value, and this is true whether the decree specifically so provides or not.”
In 14A C.J., Corporations, § 2754, page 713, it is said:
“The foreclosure decree need not require the sale of the corporate property to be for-cash. The bonds of the mortgagor corporation may be taken in lieu of cash, as cash, if .taken, would be given back again to the bondholders in any event to redeem the bonds. Nor does a provision in the decree that the property be sold, 'to the highest and best bidder for cash’ affect the rule. 'The' highest bidder for cash’ is construed as meaning ‘for cash or its equivalent’ and bonds in such case are the equivalent of cash.” See also 19 C.J.S., Corporations, § 1210, p. 888.
In Tucker v. Crown Corporation, 136 Fla. 517, 183 So. 740, 744, where the mortgagee was the successful bidder, we held:
“ * * * It would serve no useful purpose to have Crown Corporation deposit the surplus into court until the court has first determined what is to be allowed it as a credit on its mortgage”.
The rule as to mortgage foreclosure is stated in Kooman’s Florida Chancery Pleading and Practice, Supp. page 293:
“In the foreclosure of a first mortgage, the mortgagee should be accorded the right to apply the amount found to be due him under the final decree on his bid over and above the amount necessary to pay costs. A second mortgagee should be accorded the right to credit the amount of his lien on his bid over and above the amount necessary to pay costs and prior liens. *678 Tucker v. Crown Corp., 136 Fla. 517, 183 So. 740. However, even where the final decree requires all of the amount of the highest bid to be paid in cash, the fact that the first mortgagee did credit the amount due him on his bid will not warrant a setting aside of the decree. Cleveland Mortgage Co. v. Gage, 144 Fla. 758, 198 So. 677.”
These rules summarized by Kooman are accepted and unquestioned practice in chancery foreclosures and we fail to see any difference whatever in the fact that the judicial sale is conducted to carry out the provisions of a decree in a partition suit instead of a foreclosure suit. In both instances a judicial sale is conducted as an incident to the main proceedings and as a part thereof. The above appears to be supported by the overwhelming weight of authority — in fact we find no precedents to the contrary.
In 68 C.J.S., Partition, § 188, p. 305 it is said:
“Set-off or deductions. • Where the purchase price is to be first applied to the payment of an encumbrance on the premises, and the property is bid in by the encumbrancer, he can properly deduct the amount of the debt from the amount bid. Similarly, where an heir is the purchaser, it may be proper for him to deduct the part of the purchase price representing his distributive share in the proceeds. * * * ”
The above rule was applied in the case of In re Jurkowitz’ Estate, 359 Pa. 570, 59 A.2d 895. In that case the court said:
“ * * * The question is whether the court erred in authorizing, nunc pro tunc, the trustee to take a receipt from the purchasing heir for part of the purchase price representing his distributive share in the proceeds, instead of requiring the heir to pay the whole of the purchase price in cash, and later to receive from the trustee his distributive share of such proceeds.
“ * * * On the day fixed, in open court, prior to submitting sealed bids, the court announced: ‘The successful bidder will be required to pay 25 per cent of his bid into court today and the balance on tender of a marketable title by the trustee.’
“ * * * No one questions that a full, fair and adequate consideration was obtained for the real estate. The amount bid and the method of making a cash settlement have no relation to each other. It would be a useless gesture — and perhaps an embarrassing and 'harmful one — to require an heir who successfully bids in a property to pay the whole purchase price in cash and later to have returned to him his distributive share out of the very cash he had paid at the settlement. Such a contention is rejected in Re Wagner’s Estate (No. 1), 59 Pa.Super. 349, page 352, where Judge Trexler said,* * The consideration to be paid * * * so far as it was met by (the heirs’) shares in the estate, may be regarded as an advancement made to them by the accountant’ (emphasis supplied). See text and cases cited in Hunter’s Pennsylvania Orphans’ Court Common Place Book, Vol. II, p. 1001.”
Also see Annotation in Am. & Eng. Ann. Cas. 1915C., page 998; In Re Bloodgood’s Estate, 8 Pa.Co.Ct. 545; Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129; Smith v. Wright, 195 Minn. 589, 263 N.W. 903; Hamilton v. Hamilton, 130 La. 302, 57 So. 935.
The certified question i's answered in the affirmative.
ROBERTS, C. J.-, and HOBSON and MATHEWS, JJ., concur.