EDUARDO FERNÁNDEZ RAMÍREZ, Appellant, *v.* THE REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

Nos. 1360, 1361. Submitted April 3, 1961.—Decided May 2, 1961.

524

*C. Domínguez Rubio* for appellant. The respondent Registrar appeared by brief.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Eduardo Fernández Ramírez[1] presented to the Registrar of Property a certified copy of Order No. 16, Series of 1955-56, of the Municipal Assembly of Guayama, for the registration of the possession of a lot in favor of said Mu-

---

[1] Eduardo Fernández Ramírez having died after the commencement of these proceedings we ordered on August 6, 1958 that he be substituted by his heirs, Eduardo Fernández Pérez and Josefa Pérez widow of Fernández.

nicipality and the right of usufruct in favor of the appellant be recorded. The Order copied verbatim reads as follows:

"ORDER NO. 16, SERIES OF 1955–56.

"OFFICE OF THE SECRETARY AUDITOR:—

"GRANTING THE USUFRUCT OF THE MUNICIPAL LOT TO THE RESIDENT EDUARDO FERNÁNDEZ RAMÍREZ, AND PERMISSION FOR ITS REGISTRATION IN THE REGISTRY OF PROPERTY OF GUAYAMA IN THE NAME OF THIS MUNICIPALITY:

"WHEREAS: —It appears from the files of this municipality that the Municipality of Guayama has been, from time immemorial, in possession, quietly, peacefully and uninterruptedly, as owner, of a lot whose description is as follows:

" 'URBAN: Lot owned by the Municipality of Guayama, measuring forty feet on the NORTH, fifty-four feet on the SOUTH, forty-one feet on the EAST, and sixty feet on the WEST, and bounded: facing the lot, that is, on the WEST, by Rodolfo Alonso, formerly, now Juana Pica; on the left, which is the EAST, by Juana Alicea, formerly, now Carmelo Centeno; on the rear, SOUTH, by Ernesto Girod, formerly, now Francisco Fernández and on the NORTH, by the street of said location, that is Baldorioty Street.'

"WHEREAS: —The described lot has a value of FIVE HUNDRED SEVENTY DOLLARS and the Municipality of Guayama acquired it through a legacy from a lady whose name is unknown or cannot be recalled and whose will has not been found, despite the searches made to that effect, and said lot, like every other lot integrating the community, has been devoted by the municipality to concessionaires in usufruct, to wit, to the residents of the community to devote them to the construction of houses, Eduardo Fernández Ramírez, a resident of the Community, of legal age, married to Josefa Pérez and resident of Guayama, Puerto Rico, being at present in the possession and enjoyment thereof and who is at present the owner of the building erected prior to June 16, 1954:

"WHEREAS: —Although there does not appear from the files of this municipality the agreement by virtue of which the enjoyment of said lot was granted to the original usufructuaries nor to the herein mentioned Eduardo Fernández Ramírez, it is a proven fact that on said lot stands a house erected more than 20 years ago with the corresponding segregation of the

.aforesaid lot and that the right held over it by the present usufructuary, the above-mentioned Eduardo Fernández Ramírez, is legitimate:

"WHEREAS: —Said interested party has come before this Municipal Legislative Body, requesting that the corresponding order be entered granting him NUNC PRO TUNC, the usufruct of said lot, thus ratifying the enjoyment which he now exercises .and therefore permission be granted to record it in the name of the Municipality of Guayama:

"WHEREAS: —Said lot is free from any encumbrances, does not appear recorded in the Registry of Property of Gua-.yama and its registration is convenient to the interested (sic) of this Municipal Corporation:

"THEREFORE: —BE IT RESOLVED BY THE HON. MUNICIPAL ASSEMBLY OF GUAYAMA, PUERTO RICO:

"FIRST SECTION: —It is hereby accepted and declared that the resident, Eduardo Fernández Ramírez, of the foregoing personal circumstances is the owner at present of the immovable located on the above-described lot and the usufruct NUNC PRO TUNC of said lot is hereby granted by lucrative title as for now, to the petitioner herein Eduardo Fernández Ramírez, during all the time that he or his assignees or successors maintain in good conditions the construction built thereon and they abide to the other conditions established herein:

"SECOND SECTION: —It is an express condition of this concession that the Municipality of Guayama reserves the right to impose in the future, any tax, excise or rent which to that effect might be established by ordinance; the concessionary and his heirs or successors being bound to pay said tax, excise or rent:

"THIRD SECTION: —The concessionary or his assignee is likewise authorized to request the registration in the Registry of Property of the District: which registration shall be made at his expense without any further obligation on the part of the Municipality of Guayama, Puerto Rico:

"FOURTH SECTION: —This concession is made by virtue of the powers and authority granted to this Assembly by Act No. 61 approved by our Hon. Legislative Assembly of the Commonwealth of Puerto Rico on June 16, 1954, amending §§ 70 and 71 of Act No. 53 approved April 28, 1928:

"FIFTH SECTION: —The Municipal Secretary Auditor is ordered to give to the interested parties, upon payment of the corresponding fees, a certified copy, in triplicate, of the present order:

"SIXTH SECTION: —The concession and permission established herein are issued without prejudice to a third party with a better right:

"SEVENTH SECTION: —Any ordinance, order, motion or any part thereof which oppose the present order are hereby repealed."

On July 16, 1957 the Registrar denied the registration sought because, in his opinion, the document "involves the segregation of a lot having an area of less than five cuerdas[2] and the ratification of the usufruct of said lot (without stating the date of the original concession of the usufruct) without complying with the requirement of establishing the approval by the Honorable Planning Board of Puerto Rico for said segregation." On the same date he denied the registration in favor of the appellant of the possession of a house located on said lot, on the ground that said lot is not recorded and that only a cautionary notice is entered in favor of the Municipality.

▉▉▉ In the briefs introduced and in discussing the factual situation that gave rise to the refusal notes, the appellant as well as the respondent Registrar, start from the premise that the document presented for registration involves a segregation.[2a] The position assumed by the parties finds

---

[2] This reference to an area of less than 5 cuerdas was unnecessary in the case of a lot in the urban zone. See §§ 3 and 32 of the Planning Regulation No. 3 (Public Planning and Development, 23 R. & R.P.R. §§ 10-3 and 10-32; *Velázquez* v. *Registrar,* 65 P.R.R. 395 (1945); *Vega* v. *Registrar,* 65 P.R.R. 97 (1945).

[2a] In petitioner's brief, in stating the legal problem involved, it says: "We propose in this brief A.—To show that the document presented for registration contained the date of the concession of the usufruct and of the *segregation* in a way that the Registrar is compelled to accept, B.— That since said date appears therein, it is unnecessary to comply with the requisite of obtaining from the Planning Board the permission to which the Registrar refers. To apply to the facts in this case a regulation which

support in the expositive part of the order itself, when it says that "it is a proven fact that on said lot stands a house erected more than 20 years ago *with the corresponding segregation of the aforesaid lot.*"  But even if the order was susceptible of both interpretations, that is, whether or not it involves a segregation, evidently, a public policy reason tend to prompt us to adopt that which defines it as the segregation of a lot.

Section 24 of the Puerto Rico Planning Act[3] provides that from and after the effective date of the Subdivision Regulation no subdivision shall be made nor recorded in the Registry of Property except when finally approved by the Board; and the word "subdivision"[4] includes the division or subdivision of a lot, tract or parcel of land into two or more parts for sale, transfer, cession, lease, donation, *usufruct*, use, census, trust, as well as for any other transaction, or for a new

---

went into effect on September 5, 1944 when from the text of the certificate it appears that said lot, the concession, and *the segregation* of the lot were effected more than 20 years ago."  And once more, in the second assignment he states that the Regulation is inapplicable to "concessions and *segregations* (that) were effected before the act went into effect...."  As we said in *Coll* v. *Sec. of the Treas., ante,* pp. 26, 35 (1960), with reference to the facts and the evidence, the principle is that ordinarily the parties and the court are bound by the allegations, admissions and stipulations but not by the interpretation of the law, which is specifically and exclusively a function of the courts.  *Cf. Freeman* v. *Noguera, Secretary of the Treasury, ante,* p. 298,.  Although this rule refers to judicial transactions we see no reason for not applying the same to the case at bar.

[3] Act No. 213 of May 12, 1942 (Sess. Laws, p. 1106, 23 L.P.R.A. § 25), as amended by Acts No. 155 of May 14, 1943 (Sess. Laws, p. 488); No. 388 of May 11, 1950 (Sess. Laws, p. 904) and No. 434 of May 14, 1951 (Sess. Laws, p. 1226).

[4] Section 2 of the Planning Act, *supra* p. 1106, (23 L.P.R.A. § 2), as amended by Acts No. 155 of May 14, 1943 (Sess. Laws, p. 488), No. 475 of May 15, 1947 (Sess. Laws, p. 1070) and No. 388 of May 11, 1950 (Sess. Laws, p. 904).  The amendments introduced to this section as to its definition of the word "subdivision" constitute an acknowledgment of the wit of the legal profession.  See *Enríquez* v. *Registrar,* 65 P.R.R. 383 (1945); *Colón* v. *Registrar,* per curiam decided on May 9, 1947; *Martínez* v. *Registrar,* 73 P.R.R. 203 (1952); *cf. Biascoechea* v. *Registrar,* 76 P.R.R. 234 (1954).

building, and also *a simple segregation* (italics ours). We have repeatedly decided that this provision does not apply to subdivisions prior to September 4, 1944, effective date of said regulation, *Sepúlveda* v. *Registrar*, 64 P.R.R. 428 (1945); *Rivera* v. *Registrar*, 64 P.R.R. 440 (1945); *Matos* v. *Planning Board*, 66 P.R.R. 417 (1946); *Rodríguez* v. *Registrar*, 66 P.R.R. 727 (1946), in which the sale of a remainder of a lot was involved after several segregations were effected prior to the effective date of the Regulation, *Wilcox* v. *Registrar*, 67 P.R.R. 445 (1947) which dealt with a lot that appeared as an independent unit in an urbanization plan approved prior to the Planning Act; *Zayas* v. *Registrar*, 68 P.R.R. 39 (1948); *Zayas* v. *Planning Board*, 69 P.R.R. 27 (1948); *cf. Ramos* v. *Registrar*, 69 P.R.R. 660 (1949). Now, after said date, when the owner of a lot in which buildings are constructed segregates a parcel of land from the main property, and sells it, the fact that prior to the effective date of the Regulation said buildings existed, does not make it inapplicable and the approval of the Board is necessary. *Fortunet* v. *Planning Board*, 67 P.R.R. 245 (1947); *Pérez Mercado* v. *Board*, per curiam, decided on July 26, 1949; *cf. Rivera* v. *Registrar, supra.* In these cases, although the segregation existed as a matter *of fact* prior to September 4, 1944, the approval of the Planning Board is necessary if it is completed after said date.

In regard to these segregations *of fact* we said in *Alicea* v. *Registrar*, 71 P.R.R. 554, 559 (1950) that "whether the segregated lot actually existed as such prior to the effectiveness of the Subdivision Regulation, is not within the province of the Registrar to decide at first instance, but rather within the province of the Board itself." Of course, the power of said Board in these cases may not be exercised arbitrarily and the exemption from complying with the construction plans or recording, or construction of certain minimum facilities, should be granted when the evidence shows in an au-

thentic manner that the segregation occurred in fact prior to the oft-repeated date. *Fuertes* v. *Planning Board*, 76 P.R.R. 603 (1954). But the mere fact that the segregation occurred prior to September 4, 1944 does not exclude the necessity of the intervention of the Board when the segregation *is completed* after said date. To that effect, for subdivisions de facto and site improvement works previously accepted, the Subdivision Regulation, Second Edition (23 R. & R.P.R. §§ 10–404 and 10–405) provides as follows:

"Section 74.—Subdivision de facto.

"In those cases of subdivisions de facto in which, in accordance with the proof which may be submitted, the Board concludes that they were carried out before September 4, 1944, the Board shall so notify by resolution to the interested party, so that he can proceed with the filing of the same in the corresponding registry of subdivision plans.

"Section 75.—Site Improvement Works Previously Accepted.

"When the proposed subdivision is located on a street which has been legally developed and accepted as such by the corresponding municipality before the 4th of September of 1944, new improvement works for that street shall not be required, except public lighting and water and sewer services connections. Said subdivision, however, must conform to all other requirements and provisions set forth in this subchapter."

Undoubtedly *any subdivision or segregation* for the purpose of granting the right of usufruct requires the approval of the Planning Board even in cases of municipal lots. Naturally, said approval is unnecessary when it appears from the document presented for registration that the right of usufruct was granted prior to September 4, 1944. However, it is not sufficient that it be stated in the order or ordinance approved to that effect that a previous concession is ratified, if the date on which the usufruct was originally granted does not appear. In *Ramos* v. *Registrar*, 69 P.R.R. 660 (1949) we affirmed the Registrar's refusal to record a certified copy of an ordinance of the Municipal Assembly of

Gurabo ratifying the concession to a usufruct on a lot because the date of the original cession was not stated in the document since there existed the possibility that the original concession occurred subsequent to September 4, 1944.

■■ With a view to adjusting to our opinion in the *Ramos* case, the municipal ordinance in question grants the usufruct of the lot to the appellant "nunc pro tunc" and it is stated in the expositive part, that the municipality has possessed it from time immemorial, that it acquired it by a lady's legacy whose name is unknown or cannot be remembered, and that the building standing thereon was constructed over twenty years ago. We wish to make clear that although the reference to the date of the original concession is sufficient for the registration of an ordinance ratifying the original concession of a right to a usufruct, yet the mere expression of the Municipal Assembly, is not sufficient for the latter purpose, it being necessary to attach a copy of the ordinance or order of the original concession.[5] This is the only way by which the Registrar may ascertain that it is not one of those cases in which it is indispensable to obtain the exemption from the Planning Board.[6] Neither may resort be had to the simple proceeding of granting the usufruct "nunc pro tunc".[7] It is convenient to make clear that the

---

[5] We presume that the need to ratify the concession of the usufruct is due to the fact that the original concessionaire is a different person from the present usufructuary.

[6] The power recognized to the Registrar, within his duty of classifying, to examine the document of the original concession of the right of usufruct does not limit in any way the power of the courts to decide, in the appropriate cases, whether there really existed a segregation prior to the effective date of the Planning Act and its regulations. *Rosado* v. *Registrar*, 71 P.R.R. 516 (1950). In the majority of these cases—dominion title proceedings—the intervention by the Board is granted. Section 395 of the Mortgage Law (30 L.P.R.A. § 737) as amended by Act No. 71 of June 18, 1957 (Sess. Laws, p. 165).

[7] Generally the term "nunc pro tunc" is used to describe *judicial* orders and actions which are issued to correct errors of form, omissions and inadvertences. *State* v. *Ranking*, 93 N.E.2d 281 (Ohio 1950); *The Princess Sophia*, 36 F.2d 591 (DC D.C., 1929); *In re Jurkowitz' Estate*, 59

reference to the date of the original concession of the usufruct is only important in determining whether the segregation actually existed prior to September 4, 1944, but that in no case it affects the legality of the title. See § 70 of the Municipal Law of 1928 (Act No. 53 of April 28, 1928 (Sess. Laws, p. 334) as amended by Act No. 61 of June 16, 1954 (Sess. Laws, p. 334, 21 L.P.R.A. § 262)). *Rivera* v. *Registrar*, 78 P.R.R. 511 (1955).[7a] Naturally in those cases in which the petitioner accompanies the ordinance or order with a copy of the agreement of the Board dispensing from compliance with the Regulations because it was a segregation de facto, the question of the original concession of the right to usufruct lacks importance.

The recent urban planning pursues the commendable purpose of attaining an ordered and scientific development of the communities, greater general welfare and a better en-

---

A.2d 895 (Pa. 1948); *Collins* v. *Williams et al.*, 36 S.W.2d 93 (Tenn. 1931); *In re Peter's Estate*, 51 P.2d 272, 274 (Okla. 1935). *Cf.* Rule 49.1 of the Civil Procedure; *Banco Popular* v. *Superior Court; Dominguez, Int., ante*, p. 236 (1961).

[7a] The amendment introduced to the aforesaid § 70, which was made subsequently to our opinion in the *Ramos* case has not the scope of setting aside our ruling in that case, because our ruling is limited to requiring the date of the original concession of the right of usufruct for the *sole* purposes of determining whether the segregation actually existed prior to September 4, 1944, inasmuch as the concession of usufruct of lots made by a municipality *prior* to the effectiveness of the Subdivision Regulation are recordable notwithstanding the fact that the requirements of said regulation had not been met. The clear purpose of this amendment to the effect that "In the case of any person who prior to the approval of this Act has built or acquired a building on a lot belonging to the municipality without there being any proof that he has been previously granted an usufruct on said lot pursuant to this Act, the Municipal Assembly may in its discretion and on petition of the owner of the building, grant to him in perpetuity the usufruct of the lot always in conformity with the pertinent provisions of this Act relative to the granting of lots in usufruct," is to prevent that the mere fact that no proof exists of the concession of the usufruct prior to June 16, 1954, precludes the Municipal Assembly from granting the usufruct afterwards. We point out, in passing, that this provision was not added to the Municipal Law of 1960 (Act No. 142 of July 21, 1960, 21 L.P.R.A. §§ 1101 *et seq.*), effective since June 9, 1961.

joyment of the minimum facilities which the State provides. It tends, among other things, to avoid excessive traffic congestions, excessive cost of public improvements and the growth of slums or of blighted areas. The Planning Board is the agency established by the Legislature to enforce that sound public policy. Hence, we have decreed the nullity, even between the parties, of a deed of sale of a segregated lot executed without the previous authorization of the Board, *Soto v. Feliciano*, 80 P.R.R. 595 (1958).

Even when the order from the Municipal Assembly of Guayama substantially complies with all the requisites provided by the act for the registration of the municipal property,[8] still the approval or the dispense of the Planning Board was necessary. Although it was not a segregation de facto existing prior to September 4, 1944, the rules adopted by the Board for the cessions of the right of usufruct of municipal lots are very liberal.[9]

For the reasons set forth, the notes of the registrar will be affirmed.

---

MR. JUSTICE SANTANA BECERRA, dissenting.

To my understanding this case is not in its origin one of subdivision. We shall see:

By Act No. 61 of June 16, 1954—21 L.P.R.A. Cum. Supp. 1959, § 262—a provision was added to § 70 of the Municipal Law of 1928, to the effect that in the case of any person who

---

[8] Section 36 of the Mortgage Law Regulations (30 L.P.R.A. § 866), as amended by Act No. 5 of February 16, 1955 (Sess. Laws, p. 22); *Antomattei* v. *Registrar*, 40 P.R.R. 862 (1930); *Municipality* v. *Registrar*, 40 P.R.R. 198 (1929); *Ramírez* v. *Registrar*, 77 P.R.R. 710 (1954).

[9] By Order of July 24, 1957, the Board agreed on the approval of the cessions in usufruct and the sale of municipal lots with a minimum frontage of 5.5 meters and depth of 15 meters, provided they are occupied by buildings, and their frontage and areas cannot be enlarged because of the existence of special conditions preventing it. We observe, that in regards to such linear measures the lot referred to in this petition meets all the requirements specified by the Board.

prior to the approval of this Act has built or acquired a building on a lot belonging to the municipality without there being any proof that he has been previously granted an usufruct on said lot, the Municipal Assembly may in its discretion and on the petition of the owner of the building grant to him in perpetuity the usufruct of the lot. By virtue of said provision, on November 28, 1955, the Municipal Assembly of Guayama approved Order No. 16, granting the usufruct of the municipal lot to the petitioner and permission for its recording in the Registry of Property of Guayama, in the name of that Municipality, which Order is fully copied in the opinion of the Court.

Upon the same being presented for registration, the Registrar entered the following note:

"Record of the document is hereby denied on the ground that it involves the segregation of a lot having an area of less than five cuerdas and the ratification of the usufruct of said lot (without stating the date of the original concession of the usufruct) without complying with the requirement of establishing the approval by the Honorable Planning Board of Puerto Rico for said segregation. The undersigned Registrar does not have discretionary powers to exempt the parties interested in the title or deed in question from compliance with the obligations imposed by law or regulations with force of law such as is the Planning Regulation No. 3 of said Planning Board; all in conformity to our decision in 69 P.R.R. 660 Ramos v. Registrar and the principles laid down in the subsequent cases, 71 P.R.R. 554–559 Alicea v. Registrar; 72 P.R.R. 830–832 Mari v. Registrar; 74 P.R.R. 737–739 Nido & Cía. S. en C. v. Registrar and 75 P.R.R. 134–144 Seashore Realty & Invest. Co. v. Planning Board and also in accordance with the rulings established in the case of 67 P.R.R. 245 Fortunet v. Planning Board and 66 P.R.R. 727 Rodríguez v. Registrar (on reconsideration) at folio". . . . etc.

The Assembly states in its Order that the Municipality has been from time immemorial in possession quietly, peacefully, and uninterruptedly of *a lot* whose description is as

follows: measuring 40 feet on the north which is Baldorioty Street where it is located, 54 feet on the south bounded by Francisco Fernández, 41 feet on the east by Carmelo Centeno and 60 feet on the west by Juana Pica; and that the *"described lot"* was acquired by the Municipality by legacy from a lady whose name is unknown or cannot be recalled and whose will has not been found despite the search made to that effect.

Jointly with the aforesaid Order No. 16 there was presented in the Registry another Order of the Superior Court, Guayama Part, entered on April 13, 1956, in a Possessory Title Proceeding, in which the same lot is described and it is stated that it has an area of 267 square meters; that by deed No. 90 of December 4, 1946, Eduardo Fernández Ramírez, petitioner here and therein, acquired by purchase, a house located on said lot, which has been in his possession quietly and peacefully from the date in which he acquired it, and the court ordered the Registrar to record the possession of the aforesaid house standing on the lot in question in the name of Fernández. It was also stated in this Order that the adjacent owners did not oppose the proceeding and that the attorney-in-fact of the adjacent owner, Juana Ortiz widow of Pica, stated that he had nothing to object "because he knew that the lot of the property of its constituent, as well as the lot now referred to, belongs to the Municipality of Guayama, and that between both properties there is a fence that has separated them for many years." The Order of the court says that the Planning Board, to which copy of the petition was sent, had decided that its intervention was unnecessary in that possessory proceeding.

In his brief the Registrar says he rests the action taken specifically on the cases of *Ramos* v. *Registrar*, 69 P.R.R. 660 and *Alicea* v. *Registrar*, 71 P.R.R. 554, and that the *Ramos* case "is the main case on which the refusal note is based." The facts which were presented to those Registrars

and which gave rise to the ruling of this Court in those cases, are fundamentally different, in my opinion, from the facts in the present case. In the *Ramos* case, the Ordinance approved on October 24, 1944, ratifying the concession of usufruct on a lot expressly stated the following:

"WHEREAS: Said lot has a frontage of 10.40 meters and a depth of 9.40, equal to 97.76 square meters and is bounded on the North by Gregorio Rivera Street; on the South by the house of Gumersinda Ramos; on the East by Matías González Street, and on the West by the house of Juan Ramos; *and that said lot is part of a property consisting of 26 cuerdas equivalent to Ten Hectares, twenty-one ares, and ninety centiares destined to the promotion of population of the town of Gurabo; with the boundaries* [described herein] *upon which the town of Gurabo is located, and is recorded in the Registry of Property of Caguas, Folio 245, Vol. 5 of Gurabo, property 716, first inscription,* acquired under the title of purchase from Marco Donis, on March 11, 1815;" (Italics ours.)

And in the dispositive part said:

"That the concession of usufruct on the lot mentioned in this Ordinance is hereby ratified in favor of Gumersinda Ramos, which the latter shall enjoy for the period of 20 years, provided the building on said lot is kept in good conditions of decoration and cleanliness and said concession being subject, in regard to its extinction, to the causes and modes determined in the Municipal Law in effect, granting power to said CONCESSIONAIRE *to record this right in the Registry of Property in favor of this Municipality as a new property and under the corresponding number* and for the purpose of estimating the fees which said registration might cost, a sum of fifty dollars is assigned to said lot;" (Italics ours.)

It is clear that from the Ordinance of Gurabo there arose a case of subdivision which is indisputable. *Ramos* presented the problem of when said division could have taken place, since the ordinance ratifying the usufruct was approved after September 5, 1944—effective date of the Subdivision Regulation—and the same did not state the date on which the

usufruct on the segregated lot had been originally granted, whereby we said that the fact that a ratification existed did not necessarily mean that the original concession was made prior to September 5, 1944. We refused to give effect to an expression made, not in the body of the ordinance, but in the sworn statement of the Mayor, which was attached thereto, stating that Ramos had been enjoying the usufruct of the lot since the year 1938.

In the *Alicea* case, the Government of the Capital approved an Ordinance on February 9, 1944, of a general type to meet, as stated in the opinion, the conditions brought about by a district which kept growing until it covered the entire area of the main property without any previous plan of urban development. The Ordinance authorized the City Manager of the Capital to grant in lease or sale, by public auction, each and everyone of the lots belonging to the Government of the Capital located in Shanghai and San Ciprián wards, and stated that the parcels or lots referred to were described and enumerated in a report thereof which was in possession of the Secretary and the Auditor of the Capital. According to the authority granted by virtue thereof, on November 1, 1944, the City Manager of the Capital executed a public deed entitled "Execution of Auction and Assignment and Conveyance of Lot" in favor of Alicea, said deed stating that the Capital was the owner in fee simple of a *property with an area of 64,313.60 square meters which* was described and that the same appeared recorded in the Registry of Property; that the City Manager proceeded to announce the auction of some lots *according to plan drawn by the municipal engineer Juan José Otero, on October 6, 1944* (note that the plan was subsequent to September 4, 1944, effective date of the Subdivision Regulation) and that Alicea having made a bid which was accepted, was awarded the lot on the above-mentioned property of 134.10 square meters for the sum of $1.00.

As in the Gurabo case, it is clear that the document presented to the Registrar in this case contained a subdivision. The *Alicea* case reveals something more. The interested party himself to whom record was denied, had submitted to the Planning Board a Statement of Intent to Subdivide in regard to said lot, which was rejected by the Board because it believed, and we were of the same opinion, that it was the Government of the Capital which should submit the project. In the *Ramos* as well as in the *Alicea* case, we made reference to the case of *Rivera* v. *Registrar*, 64 P.R.R. 440. This was a case of public deed which clearly revealed a case of subdivision. From a lot of 231 square meters on which two buildings were erected, 121 meters were segregated with one of the buildings. This occurred on September 22, 1944 after the effectiveness of the Regulation. Supporting the note of refusal for lack of the subdivision plan, we held, among other things, that the fact that a house was built did not preclude the demanding of said plan, the segregation having been made after the Regulation went into effect, because even then the Board could correct any deficiency in regard to the enforceable requisites. *Cf. Fortunet* v. *Planning Board*, 67 P.R.R. 245.

*Rodríguez* v. *Registrar* (on reconsideration) cited in the note, 66 P.R.R. 727, involves such a clear case of subdivision by deed that it is not necessary to state its facts in detail. *Mari* v. *Registrar*, 72 P.R.R. 830, also cited, involved a recorded lot of 300 square meters which they wanted to rerecord by means of a certification of survey with only 189.77 meters, without the survey stating that there was an error in the original area. We said that a segregation of the 110.23 remaining meters could be logically inferred.

Let us compare the cases. The Municipality of Guayama alleges in its own Order that from time immemorial it has been in possession uninterruptedly of the lot described on its four cardinal points with definite dimensions which give an

specific area of 267 square meters as previously stated and that the "*described lot*" with said dimensions and with such area was acquired by virtue of a legacy. Also that "*said lot,*" like the others of the community granted to the concessionaires in usufruct for the construction of houses, was at the present time in the possession and enjoyment of the petitioner who was the owner of the building constructed thereon. The Order itself states (not a person alien to the Assembly as in the *Ramos* case) the proven fact of the existence of said house for more than twenty years with its subsequent segregation of said lot and the legitimacy of the right exercised over it by the present usufructuary.

I cannot convince myself that this Order presented to the Registrar a subdivision case. Section 2 of the Planning and Budget Act of Puerto Rico—23 L.P.R.A. § 2—defines subdivision as the *division or subdivision* of a lot, tract or parcel into two or more parts for sale, cession . . . *usufruct*, use . . . or for any other transaction . . .; also a simple segregation. Whether for any of the above-mentioned purposes, among which usufruct is included, or for no specific purpose, the subdivision requires the division or subdivision of a parcel of land into two or more parts. See: *Martínez v. Registrar,* 73 P.R.R. 203; *Biascoechea v. Registrar,* 76 P.R.R. 234.

It is true that when we speak about the proven fact of the existence of the house built "thereon" more than 20 years ago it is added: "with the subsequent segregation of said lot." But if the Municipality acquired the lot with the same area and dimensions by its cardinal points as when granted in and not with a larger area, taking the phrase in the light of the whole context of the Order, without isolating it separately—aside from the fact that it does not say that a segregation was effected—it was a way of stating that a house had been built on a lot which had been segregated or delimited as a unitary body. What was stated by an adjacent owner

in the possessory title proceeding, assuming that it be considered as said by the Municipal Assembly, does not indicate either that a segregation was made. It rather indicates the contrary. Significantly, in its careful argument the Registrar at no time mentions said phrase in support of his position.

When the Registrar passed on the document he could not doubt the statement of the Municipality as to how it acquired the lot and area. *Cf. Nido & Cía. S. en C.* v. *Registrar*, 74 P.R.R. 737; *Noguera* v. *Registrar*, 72 P.R.R. 186. It does not seem that he doubted it, as in his note he raised no objection for failure of introducing the will or any other complementary document to establish said fact.

From which I infer, in view of the substantial differences in the ordinances, that the Registrar interpreted the *Ramos* and the other cases cited to the effect that in all cases the concession of the usufruct on a lot by the Municipality involves, *ipso jure*, a subdivision.[1] If this were so, we would have to conclude that pursuant to § 2 of the Planning Act, a subdivision exists wherever the title in fee simple of an estate is separated into the naked ownership and the usufructuary dominion, without dividing or subdividing the estate.

Since the Order herein involved does not present, in my judgment, a case of subdivision in its origin, it is not necessary to discuss the doctrine in regard to subdivisions de facto prior to the effectiveness of the Regulation, as to which I have nothing to oppose, and I am of the opinion that the notes of the respondent registrar should be reversed.

---

[1] It is possible that it involves more frequently a matter *of fact* if we bear in mind that ordinarily the lots granted in usufruct are parcelings or delimitations for the private use of the common land or the public property of a large size. This is not the ordinary case.